454 S.E.2d 378

**STATE of West Virginia, Plaintiff Below, Appellee,**

**v.**

**Harry E. FARMER, Defendant Below, Appellant.**

**No. 22162.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1994.

Decided Dec. 9, 1994.

Laura Young, Asst. Pros. Atty. for Kanawha County, Charleston, for appellee.

Matthew W. Crabtree, Asst. Public Defender, Charleston, for appellant.

McHUGH, Justice:

This case is before this Court upon the appeal of Harry E. Farmer from the jury verdict which found him guilty of joyriding and guilty of one count of kidnapping. By an order dated January 28, 1993, the Circuit Court of Kanawha County sentenced the appellant to six months imprisonment for his joyriding conviction and to ninety years imprisonment for his kidnapping conviction, with the two sentences running concurrently. For the reasons set forth below, we affirm the appellant's conviction and sentence.

## I

The events in the case before us started on December 9, 1991, when the appellant went to Hardees, a fast-food restaurant in Marmet, West Virginia, where his wife, Pauline Farmer, worked, to talk to her about their marital problems. When Ms. Farmer arrived at work with her friend, Diana Petry, the appellant, with his gun, demanded that Diana Petry and Ms. Farmer get into Diana's car. After the appellant had driven the car less than a block, he released Diana Petry.

The appellant then drove Ms. Farmer to a remote cemetery in Boone County. Although the evidence is conflicting, there is evidence that the appellant threatened to kill himself and Ms. Farmer. Ms. Farmer, in an attempt to calm things down, told the appellant that she would reconcile with him, but she needed to return the car to her friend. The appellant allowed Ms. Farmer to leave alone in the car.

In the meantime, the Marmet police were informed of the situation, and they asked Arlie Sutphin, who retired from the Kanawha County Sheriff's Department as a sergeant and is now working as a private investigator, to locate the appellant. Mr. Sutphin located and arrested the appellant.

Eventually, the appellant was indicted for two counts of kidnapping and one count of aggravated robbery. The jury found the appellant guilty of one count of kidnapping with a recommendation of mercy. The jury also found the appellant guilty of joyriding. It is from this jury conviction and sentencing which followed that the appellant appeals.

## II

Essentially, the first issue is whether under West Virginia's kidnapping statute, set forth in *W.Va.Code*, 61–2–14a [1965], the jury must make factual findings on the existence of bodily harm and on whether ransom, money or any other concession has been paid or yielded before the trial judge may impose a sentence for a term of years not less than twenty or a sentence for a term of years not less than ten. The appellant argues that the *West Virginia Constitution* art. III, §§ 10 and 14, which outline a defendant's due process rights and right to trial by jury,[1] would be violated if the jury is not allowed to make the factual findings regarding the existence of bodily harm and on whether ransom, money or any other concession has been paid or yielded before the judge can impose a sentence for a term of years not less than twenty or a sentence for a term of years not less than ten, pursuant to West Virginia's kidnapping statute.

The crux of this issue involves the language found in *W.Va.Code*, 61–2–14a [1965]. We acknowledge that *W.Va.Code*, 61–2–14a [1965][2] is not a model of clarity. Therefore,

---

1. *W.Va.Const.* art. III, § 10 states: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

 *W.Va.Const.* art. III, § 14 states:
 Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county were the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witness against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor.

2. *W.Va.Code*, 61–2–14a [1965] states, in relevant part:

 If any person, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this State or within this State, or otherwise kidnap any other person, for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself or others from bodily harm or of evading capture or arrest after he or they have committed a crime, he shall be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary for life, and he, ... shall not be eligible for parole: provided, That the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole ... Provided further, That in all cases where the person against whom the offense is committed is returned, or is permitted to re-

we will provide a simplified version of the relevant portions of the statute. *W.Va.Code,* 61–2–14a [1965] states that if any person by force, threat, etc., takes, etc., or kidnaps any other person for the purpose of receiving ransom, money, or any other concession, he shall be guilty of a felony and imprisoned for life, without eligibility of parole, unless the jury recommends mercy. Additionally, *W.Va.Code,* 61–2–14a [1965] provides that if a person is returned without bodily harm, but after ransom, money or any other concession has been paid or yielded, he shall be imprisoned for a term of years of not less than twenty. Furthermore, *W.Va.Code,* 61–2–14a [1965] states that if the person is returned without bodily harm and without ransom, money or any other concession being paid or yielded, he shall be imprisoned for a term of years not less than ten.

 This Court, when addressing the provisions in *W.Va.Code,* 61–2–14a, which relate to the factual findings that must be made before a sentence for a term of years not less than twenty or a sentence for a term of years not less than ten may be imposed, in *Pyles v. Boles,* 148 W.Va. 465, 479, 135 S.E.2d 692, 701 (1964), *cert. denied,* 379 U.S. 864, 85 S.Ct. 130, 13 L.Ed.2d 67, stated:

> [T]he foregoing statutory provisions [found in *W.Va.Code,* 61–2–14a] relating to the punishment do not state or prescribe degrees or essential elements of the crime of kidnapping, [therefore,] the jury is not required to make any finding with respect to the punishment to be imposed, except in the case in which it finds that the accused should be punished by confinement in the penitentiary for life.

> turn, alive, without bodily harm having been inflicted upon him, but after ransom, money or other thing, or any concession or advantage of any sort has been paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than twenty: *And provided further, That in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him, but without ransom, money or other thing, or any concession or advantage of any sort having been paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than ten.*
> (emphasis added).

*Pyles* clearly points out that the factual determinations regarding the existence of bodily harm and the payment of ransom, money, or the yielding of any other concession, relate to the punishment rather than to the proof required of the State as to the elements of the crime. Trial judges routinely make factual determinations when determining the sentences defendants should receive. As long as the jury is required to find whether the elements of a crime have been proven, the defendant's due process rights and right to a trial by jury are not violated by a trial court making factual determinations relating to sentencing.

The Supreme Court of the United States used this reasoning in *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). In *Walton, Ariz.Rev.Stat.Ann.* § 13–703 (1989), which sets forth the sentence for first degree murder, was at issue. *Ariz.Rev. Stat Ann.* § 13–703 (1989) provides that aggravating or mitigating circumstances which are defined in § 13–703(F) and (G) are to be considered before a death or life sentence is imposed.[3] The appellant's argument in *Walton* was

> that every finding of fact underlying the sentencing decision must be made by a jury, not by a judge, and that the Arizona scheme would be constitutional only if a jury decides what aggravating and mitigating circumstances are present in a given case and the trial judge then imposes sentence based on those findings.

*Id.* at 647, 110 S.Ct. at 3054, 111 L.Ed.2d at 524.

3. The following is an example of some of the aggravating circumstances a trial judge may consider when determining whether or not to impose the death penalty pursuant to *Ariz.Rev.Stat. Ann.* § 13–703: whether the defendant was previously convicted of another serious offense and whether the defendant committed the offense in an especially heinous, cruel or depraved manner. An example of some of the mitigating circumstances a trial judge may consider pursuant to *Ariz.Rev.Stat.Ann.* § 13–703 includes whether the defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired and whether the defendant was under unusual and substantial duress.

88

The Supreme Court of the United States rejected this argument stating that " '[a]ggravating circumstances are not separate penalties or offenses, but are "standards to guide the making of [the] choice" between the alternative verdicts of death and life imprisonment. Thus, under Arizona's capital sentencing scheme, the judge's finding of any particular aggravating circumstances does not of itself "convict" a defendant . . ., and the failure to find any particular aggravating circumstance does not "acquit" a defendant[.]' " *Id.* at 648, 110 S.Ct. at 3054, 111 L.Ed.2d at 525 (citation omitted).[4] Likewise, in the case before us, West Virginia's kidnapping statute simply provides standards the trial judge may use when determining which sentence to impose.

■ Accordingly, we hold that pursuant to West Virginia's kidnapping statute set forth in *W.Va.Code*, 61–2–14a [1965], a trial judge, for purposes of imposing a sentence on a defendant for a term of years not less than twenty or a sentence for a term of years not less than ten, has the discretion to make findings as to whether a defendant inflicted bodily harm on a victim and as to whether ransom, money, or any other concession has been paid or yielded for the return of the victim. Because the findings by the trial judge are made solely for the purpose of determining the sentence to be imposed on a defendant and are not elements of the crime of kidnapping, *W.Va.Const.* art. III, §§ 10 and 14, relating to a defendant's due process

rights and right to a trial by jury, are not violated.

■ Additionally, in syllabus point 4 of *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982), this Court stated: "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." *See also* syl. pt. 7, *State v. Layton*, 189 W.Va. 470, 432 S.E.2d 740 (1993). In the case before us, the trial court noted in the record when sentencing the appellant that the appellant had prior convictions.

The trial court noted that in December of 1973 the appellant was indicted for raping and robbing a waitress. The appellant entered a plea of guilty to an unaggravated robbery and the rape charge was dismissed. The appellant was released on a writ of habeas corpus. Thereafter, the appellant was reindicted for this same incident and entered a plea of guilty to rape. One month after being placed on probation for that crime, the appellant was charged with first degree sexual abuse after abducting a young girl and was sentenced to prison for violating his probation. When he was released from prison, the appellant committed another felony in Florida with an armed weapon. Based on this information, the circuit court's sentencing is not subject to appellate review since it did not base the appellant's sentence on some impermissible factor.[5]

4. The United States Sentencing Commission has provided standards which allow the trial judge, and not the jury, to make factual determinations which may increase or decrease a sentence in the *Federal Sentencing Guidelines Manual*. For instance, if a defendant is convicted of kidnapping in the federal court system, the trial judge may increase the sentence under the Federal Sentencing Guidelines if ransom is paid, if the victim received serious injury, if a dangerous weapon was used, if the victim was sexually exploited, etc. *See* United States Sentencing Commission, *Federal Sentencing Guidelines Manual* § 2A4.1 (1994). It is the federal district judge who determines whether or not any of the above factors exist:

In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient

indicia of reliability to support its probable accuracy. Within the framework of procedural due process, a district judge's discretion when imposing sentence is largely unlimited either as to the kind of information he may consider or the source from which it may come.

New Topic Service Am.Jur.2d *Federal Sentencing Guidelines* § 47 (1993) (footnotes omitted).

5. The appellant points out the unusual results which may occur under *W.Va.Code*, 61–2–14a [1965] in that a defendant may receive a life sentence with a recommendation of mercy from the jury and be paroled sooner, than if the trial court sentences the defendant to ninety years of imprisonment under the determinate sentence provisions in the statute. However, "[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten, or

## III

The second issue involves the circumstances under which the appellant was apprehended by Mr. Sutphin. Mr. Sutphin found the appellant walking along the highway. He stopped his truck and asked the appellant if he wanted a ride. When the appellant climbed into the truck, Mr. Sutphin pointed a gun towards the appellant and told him he was under arrest. After reading the appellant his rights, Mr. Sutphin seized a gun, ammunition, and an Exacto knife from the appellant. The question before us is whether Mr. Sutphin, as a private citizen, has the authority to arrest the appellant for an offense not committed in his presence. The appellant asserts that Mr. Sutphin did not have the authority to arrest him; therefore, the trial court should have excluded any evidence which was obtained from the invalid arrest.[6]

At the outset, we note an illegal arrest does not bar prosecution, nor may a conviction be challenged solely on the basis of the illegal arrest. 1 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* I–182 (2d ed. 1993), *citing to Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) and *State v. Canby*, 162 W.Va. 666, 669 n. 2, 252 S.E.2d 164, 167 n. 2 (1979). However, the remedy for an illegal arrest is excluding any evidence obtained incident to the illegal arrest pursuant to the Fourth Amendment of the *United States Constitution*. Cleckley, *supra* at I–184, *citing to United States v. Neiswender*, 590 F.2d 1269 (4th Cir.1979), *cert. den.*, 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068. In the case before us, there is no need for us to address whether Mr. Sutphin's actions resulted in an illegal arrest, because even if the arrest were illegal and Mr. Sutphin's testimony at trial was removed, there is still sufficient evidence for the jury to find beyond a reasonable doubt the appellant guilty of kidnapping under a harmless error analysis.[7]

---

given a construction of which its words are not susceptible, or which is repugnant to its terms which may not be disregarded." *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars of the United States, a Corporation*, 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted). *See also* syl. pt. 1, *Consumer Advocate Division of the Public Service Commission v. Public Service Commission*, 182 W.Va. 152, 386 S.E.2d 650 (1989).

Additionally, in *State v. Houston*, 166 W.Va. 202, 273 S.E.2d 375 (1980), this Court noted that West Virginia's kidnapping statute is an open-ended sentencing statute. In syllabus point 1 of *Houston* this Court stated the following:

'Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offense." ' Syllabus Point 8, *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980).

This Court went on to outline factors which should be considered when sentencing pursuant to an open-ended sentencing statute such as our kidnapping statute. However, since the appellant does not argue that his sentence violates the proportionality principle of the *West Virginia Constitution*, we decline to further address this issue.

6. At the suppression hearing, the trial court found that although Mr. Sutphin was a private citizen, the arrest was not unlawful since there was an outstanding warrant on a misdemeanor and there was also an outstanding warrant on the felonies. Therefore, the trial court did not suppress Mr. Sutphin's testimony.

7. We point out if Mr. Sutphin is a private citizen who makes an illegal arrest and not an agent of the State, the evidence obtained by Mr. Sutphin would not be excluded since private citizens cannot violate the Fourth Amendment. *See* syllabus point 1, *State v. Oldaker*, 172 W.Va. 258, 304 S.E.2d 843 (1983) ("United States Constitution, Amendment IV, and West Virginia Constitution, Article III, § 6, do not apply to searches by private individuals unless they are acting as instruments or agents of the State.")

Additionally, the appellant correctly states that we have not addressed when and if a private person has the right to make an arrest. Generally, a private person can have no more rights than a police officer to arrest someone without a warrant. 5 Am.Jur.2d *Arrest* § 34 (1962). *W.Va. Code*, 62–10–9 [1993] gives the police the power to arrest without a warrant for any crimes committed in their presence. Additionally, in *City of McMechen v. Fidelity and Casualty Co. of N.Y.*, 145 W.Va. 660, 665–66, 116 S.E.2d 388, 391–92 (1960), this Court stated that a peace officer may arrest without a warrant if there are reasonable grounds for him to believe that a felony has been committed; however, a peace officer may only arrest without a warrant if a misdemeanor is committed in his presence. Therefore, a private citizen cannot have more rights than those prescribed for police officers.

Although West Virginia has not specifically outlined the rights of a private person to make an

■ We recently explained the harmless error analysis in *State v. Kelley*, 192 W.Va. 124, 451 S.E.2d 425 (1994). We pointed out in *Kelley* that the Supreme Court of the United States set forth the federal standard for a constitutional harmless error analysis in *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). The Court in *Fahy* stated that the question which must be asked when determining whether or not the error is harmless is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* at 86–7, 84 S.Ct. at 230, 11 L.Ed.2d at 173.

*Fahy* was revisited in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman* the Supreme Court of the United States noted that its rule and not the state's rule is controlling when constitutional errors are raised. The court in *Chapman* went on to reiterate that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710–11.

■ We adopted the above standard in *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). In syllabus point 20 of *Thomas*

we held: "Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction."

We conclude upon applying the above principles to this case that the error was harmless. Mr. Sutphin, at trial, testified that he arrested the appellant. Mr. Sutphin also testified that he removed a loaded gun from the appellant, and found ammunition and an Exacto carving knife on the appellant.

The appellant also contends that Mr. Sutphin testified at trial to inculpatory statements made to him by the appellant. However, our review of the trial record does not reveal that the jury heard any evidence regarding inculpatory statements made by the appellant to Mr. Sutphin.

■ Therefore, the only information which Mr. Sutphin testified to that could be harmful was the fact that he removed a loaded gun from the appellant. However, at least two other witnesses testified to the appellant having a gun: Ms. Farmer[8] and Ms. Petry.[9] Additionally, the appellant himself testified to pointing a gun at Ms. Farmer on at least one occasion.[10] Therefore, Mr. Sutphin's testimony was merely cumulative

---

arrest, *W.Va.Code*, 61–3A–4 [1981] does give certain persons the right to detain an individual for investigation for not more than thirty minutes if there are reasonable grounds to suspect that the individual has shoplifted. However, this is the only statute that we are aware of which gives a private person the authority to detain another individual. "At common law, a private person can arrest without a warrant for [a] felony or [a] breach of peace committed in his presence." 5 Am.Jur.2d *Arrests* § 35 (1962) (footnotes omitted). This Court cited to 5 Am.Jur.2d *Arrests* and noted this general rule in *State v. Muegge*, 178 W.Va. 439, 442, 360 S.E.2d 216, 219 (1987), without elaboration. There is no need for us to further address this issue in order to resolve the case before us.

8. Ms. Farmer testified to the following:
 [Ms. Farmer] A[.] When I arrived at work I got out of the car, went around the building, to the back entrance door where we always go in. And as I was—we rang the door buzzer [at Hardees] for them to let us—open the door. And when we was getting ready to open the door, a gun came out of the door and Harry [the appellant] was behind it.

. . . .
 [The State] Q[.] ... After he walked out of the door holding the gun, what happened next?
 [Ms. Farmer] A[.] He grabbed me by the arm and told me to go to the car, me and Diane. And I moved, shifted, and I guess he thought I was going to try and run, and he slapped me on the side of the face, on the left side.

9. Ms. Petry testified that she gave the keys of her car to the appellant because he had a gun on her: "Q[.] Why did you give him your car keys? A[.] Because he told me to, and he had a gun on me."

10. The appellant testified to the following at trial: "A[.] She never had the gun pointed at her but one time coming out of Hardees. The rest of the time the gun was in my belt. The gun was never waved in her face." Additionally, the appellant testified to the following: "[The State] Q[.] To the best of your knowledge on the morning of December 9, 1991, your wife would not have spent any time with you had you not been armed with a gun and forced her to? [The appellant] A[.] That's true."

and corroborative of other testimony presented at the trial.

 Ms. Farmer's and the appellant's testimony provides sufficient evidence to prove the elements of kidnapping since their testimony indicates that Ms. Farmer was taken by force for the purpose of the appellant receiving some sort of concession from her. Therefore, even if Mr. Sutphin's testimony should have been suppressed, there is no reasonable possibility that the error contributed to the appellant's conviction. Accordingly, we find that even if Mr. Sutphin had illegally arrested the appellant, the error is harmless. Therefore, there is no reversible error.[11]

## IV

Based on the foregoing, we find no reversible error in the case before us. Accordingly, we affirm the jury conviction and sentence the appellant received for kidnapping and joyriding in the Circuit Court of Kanawha County.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, J. (Ret.), sitting by temporary assignment.

---

**11.** The appellant raises an additional issue on whether a general verdict of guilty returned by a jury is void as a matter of law when it cannot be said, upon review of the record, that the jury was unanimous in their findings. The appellant argues since W.Va.Code, 61–2–14a [1965] provides several different ways a kidnapping can occur, the jury must specify exactly how the kidnapping occurred. For instance, W.Va.Code, 61–2–14a [1965] provides, in part: "If any person, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this State or within this State ... for the purpose or with the intent of shielding or protecting himself or others...." The appellant argues that the jury must agree and indicate their agreement as to whether the person took by force or duress or fraud or etc. We disagree.

In syllabus point 1 of *Pyles, supra,* this Court held that *W.Va.Code,* 61–2–14a created only one criminal offense of kidnapping: "Section 14a, Article 2, Chapter 61, Code, 1931, as amended, creates a single capital offense." The statute merely gives an elaborate definition of what constitutes the *actus reus* (guilty act) and *mens rea* (guilty mind) of kidnapping. Therefore, the jury is only required to determine beyond a reasonable doubt whether a defendant has committed kidnapping, and if requested, whether or not the defendant should be given mercy. Accordingly, since we find that the appellant's contentions are without merit, we decline to further address this issue.