352 S.E.2d 152

**STATE of West Virginia**

v.

**Delmer Lee COZART.**

**No. 16890.**

Supreme Court of Appeals of West Virginia.

Dec. 19, 1986.

Wilbert A. Payne, Brown H. Payne, Payne & Payne, Beckley, for appellant.

Atty. Gen. Charlie Brown and Asst. Atty. Gen. Doren Burrell, Charleston, for appellee.

MILLER, Chief Justice:

Delmer Lee Cozart appeals his conviction by a jury in the Circuit Court of Raleigh County of third offense driving

under the influence of alcohol. He was sentenced to an indeterminate term of not less than one nor more than three years. The main issue raised on appeal[1] is whether the trial court erred in allowing the State to introduce testimony concerning the defendant's refusal to take a breathalyzer test.

Corporal Charles Lilly of the Raleigh County Sheriff's Department testified that at approximately 10:30 p.m. on March 24, 1984, he observed the defendant driving in an erratic manner. After turning on his blue flashing lights, Corporal Lilly pursued the defendant, whose car was weaving from one side of the road to the other. Shortly thereafter, the defendant stopped on the right-hand side of the road.

Upon approaching the defendant, Corporal Lilly noticed a strong smell of alcohol on his breath and observed an unspecified number of opened and unopened beer cans in the car. There were also two passengers in the car. Corporal Lilly asked the defendant to get out so that he could administer three field sobriety tests to determine if the defendant was intoxicated. The defendant got out of the car and cooperated, but failed the field sobriety tests both times they were administered. These tests were performed in front of two other deputy sheriffs, who corroborated Corporal Lilly's testimony. All three deputies testified that based upon their training and experience, the defendant appeared to be intoxicated.

After the defendant failed the tests, Corporal Lilly placed him under arrest for driving under the influence of alcohol. The defendant was then asked if he would be willing to take a breathalyzer test and Corporal Lilly informed the defendant of the consequences for refusing to take a breathalyzer. A card detailing this information was also given to the defendant, who advised Corporal Lilly that he did not want to take a breathalyzer test. On the way to the magistrate, the defendant was asked on two more occasions if he would take a breathalyzer test, but he again refused. The defendant objected to the introduction of this refusal evidence.

■ The defendant asserts that the trial court committed reversible error by permitting Corporal Lilly to testify about the defendant's refusal to take a breathalyzer test. In Syllabus Point 1 of *State v. Adams*, 162 W.Va. 150, 247 S.E.2d 475 (1978), we held that such evidence was inadmissible: "A criminal defendant's refusal to take tests to determine his state of intoxication per *W.Va. Code*, 17C–5A–1 cannot be commented upon or introduced into evidence by the state at his trial for driving while intoxicated."

Although Syllabus Point 1 of *Adams* does not precisely state the reasons for excluding this evidence, it is clear from reading the opinion that our decision was based upon constitutional, statutory, and evidentiary grounds. As a result of the United States Supreme Court's decision in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), and various changes in our relevant statutes, we have decided to reexamine *Adams* to determine if it is still valid law.

In *Adams*, 162 W.Va. at 152, 247 S.E.2d at 476, we stated that the admission of

---

**1.** The defendant also argues the trial court erred in allowing the State to admit evidence that he had been convicted of driving under the influence of alcohol on two prior occasions. In support of this argument, the defendant cites *State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431 (1977), where we held that a defendant in a criminal case who elects to testify may have his credibility impeached by showing prior convictions of perjury or false swearing.

The defendant's credibility is not the issue in the present case, particularly since he did not testify at trial. The issue is whether the defendant was guilty of a third offense of driving under the influence of alcohol, in violation of

W.Va.Code, 17C–5–2(i) (1983). Obviously, where a prior conviction is a necessary element of the current offense charged or is utilized to enhance the penalty after a jury finding that the defendant has committed such prior offense, it is admissible for jury purposes and *McAboy* is not applicable.

The defendant did not argue before the trial court and we do not address whether the trial should have been bifurcated. *See, e.g., State v. Geschwind*, 136 Ariz. 360, 666 P.2d 460 (1983) (en banc); *Peters v. State*, 286 Ark. 421, 692 S.W.2d 243 (1985); *Smith v. State*, 451 N.E.2d 57 (Ind.Ct.App.1983).

such refusal evidence would violate a defendant's right against self-incrimination: "[T]o allow evidence of refusal to be admitted is, we believe, equivalent to allowing comment by a prosecutor about a defendant's failure to give evidence. In *State v. Boyd*, [160 W.Va. 234], 233 S.E.2d 710 (1977), we held that a prosecutor may not comment upon defendant's silence or failure to testify because the federal constitution's Fifth Amendment, and Article III, Sections 5 and 10 of the West Virginia Constitution, thereby lose their protective qualities." (Footnote omitted).

At the time *Adams* was decided, the United States Supreme Court had not yet addressed the issue and there was a split of authority among state jurisdictions. However, the issue was addressed in *Neville*, where the defendant had refused to take a breathalyzer test offered to him by arresting officers. The trial court ruled in the criminal trial for driving under the influence that the refusal evidence had to be suppressed. The South Dakota Supreme Court affirmed this decision on federal and state constitutional grounds on the basis that such evidence violated the defendant's right against self-incrimination.

In reversing this decision, the United States Supreme Court held in *Neville*, 459 U.S. at 562, 103 S.Ct. at 921–22, 74 L.Ed.2d at 757–58, that the admission of this refusal evidence did not violate a defendant's right against self-incrimination because such refusal was not coerced or compelled:

"Since no impermissible coercion is involved when the suspect refuses to submit to take the test, regardless of the form of refusal, we prefer to rest our decision on this ground, and draw possible distinctions when necessary for decision in other circumstances.

"As we stated in *Fisher v. United States*, 425 U.S. 391, 397 [96 S.Ct. 1569, 1574, 48 L.Ed.2d 39, 47] (1976), '[t]he Court has held repeatedly that the Fifth Amendment is limited to prohibiting the use of "physical or moral compulsion" exerted on the person asserting the privilege.' This coercion requirement comes directly from the constitutional language directing that no person 'shall be *compelled* in any criminal case to be a witness against himself.' U.S. Const., Amdt. 5 (emphasis added)." (Footnote omitted).

The defendant in *Neville* argued that since the arresting police officers did not advise him that his refusal could be used against him as evidence, the refusal evidence had to be suppressed under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). This argument, which is similar to the one we accepted in *Adams*, was rejected by the United States Supreme Court in *Neville*, 459 U.S. at 565–66, 103 S.Ct. at 923–24, 74 L.Ed.2d at 759–60:

"Unlike the situation in *Doyle*, we do not think it fundamentally unfair for South Dakota to use the refusal to take the test as evidence of guilt, even though respondent was not specifically warned that his refusal could be used against him at trial. First, the right to silence underlying the *Miranda* warnings is one of constitutional dimension, and thus cannot be unduly burdened.... Respondent's right to refuse the blood-alcohol test, by contrast, is simply a matter of grace bestowed by the South Dakota Legislature.

"... It is true the officers did not inform respondent of the further consequence that evidence of refusal could be used against him in court, but we think it unrealistic to say that the warnings given here implicitly assure a suspect that no consequences other than those mentioned will occur. Importantly, the warning that he could lose his driver's license made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." (Citations omitted; footnotes omitted).

We have generally followed decisions of the United States Supreme Court involving the right against self-incrimination found in the Fifth Amendment to the United States Constitution in interpreting our counterpart in Article III, Section 5 of the West Virginia Constitution because they are sim-

ilarly worded.[2] *See generally State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979); *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977); *State v. Abdella,* 139 W.Va. 428, 82 S.E.2d 913 (1954). Accordingly, we accept the holding in *Neville* and conclude the admission into evidence at a criminal trial of the fact that a defendant arrested for driving under the influence of alcohol refused to take a breathalyzer test offered to him does not violate the defendant's right against self-incrimination guaranteed under the Fifth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution.[3] To the extent that *Adams* excludes such evidence on these constitutional grounds, it is overruled.

Our decision in *Adams* was also based upon statutory grounds. After quoting the relevant statutes, we stated, 162 W.Va. at 152, 247 S.E.2d at 476:

> "[T]here is a clear statutory right to refuse the tests, although to do so may subject one to loss of driver's license for six months. This right, probably inspired by a legislative desire to protect citizens from corporal forceful testing, would be eroded if its exercise could be put into evidence in a later trial." (Footnote omitted).

Since *Adams* was decided, the legislature has amended the relevant statutes and has renumbered the relevant statutes so that the statutory references in *Adams* have changed. The counterpart of W.Va.Code, 17C–5–7(a) (1983), was discussed in *Adams* and provides, in relevant part:

**2.** The Fifth Amendment of the United States Constitution provides, in part: "No person ... shall be compelled in any criminal case to be a witness against himself...." Article III, Section 5 of our Constitution states, in part: "[N]or shall any person, in any criminal case, be compelled to be a witness against himself...."

**3.** For the sake of simplicity, we use the term "breathalyzer" in this opinion, but we recognize that W.Va.Code, 17C–5–7(a) (1983), refers to "any secondary chemical test," one of which is a breathalyzer.

**4.** The pertinent portion of W.Va.Code, 17C–5–4 (1983), states: "Any person who drives a motor vehicle in this State shall be deemed to have

> "If any person under arrest as specified in section four [§ 17C–5–4], of this article refuses to submit to any secondary chemical test, the test shall not be given: Provided, that prior to such refusal, the person is given a written statement advising him that his refusal to submit to the secondary test finally designated will result in the revocation of his license to operate a motor vehicle in this State for a period of at least one year and up to life."

This particular statute deals exclusively with the administrative suspension or revocation of a driver's license for refusing to submit to a secondary chemical test. There is no provision in W.Va.Code, 17C–5–7 (1983), concerning whether the refusal to take a secondary test may be admissible in a criminal trial on a charge of driving under the influence of alcohol. Neither our implied consent statute, W.Va. Code, 17C–5–4 (1983),[4] which was also discussed in *Adams*, nor any other relevant statutory provision directly addresses this issue. Consequently, we cannot conclude, as implied in *Adams*, that there is any statutory provision directly prohibiting the admission into evidence at a criminal trial of the fact that a defendant arrested for driving under the influence of alcohol refused to take a breathalyzer test offered to him.[5]

Our final concern in *Adams*, 162 W.Va. at 155, 247 S.E.2d at 477–78, was that from an evidentiary standpoint, the probative value of evidence that a person refused to take a breathalyzer test was suspect:

given his consent by the operation thereof, subject to the provisions of this article, to a preliminary breath analysis and a secondary chemical test of either his blood, breath or urine for the purposes of determining the alcoholic content of his blood."

**5.** We note that over thirty-four states have adopted statutes that specifically allow for the admission of such refusal evidence. A few states specifically exclude such evidence and some states have no statutes addressing the issue. *See* 3 R. Erwin, Defense of Drunk Driving Cases 30–App–1 through –161 (3d ed. 1985). Some states place almost no restrictions on such evidence while others limit the purposes for which such evidence may be considered.

"We question the trustworthiness of evidence of defendant's refusal to submit to the tests. The basic reason a prosecutor desires to introduce such evidence, and the only real relevance of such evidence, is that the refusal indicates defendant's fear of the test results and his own knowledge that he is guilty. But where there is no explanation of defendant's refusal offered, the evidence is untrustworthy because it does not prove that defendant was simply attempting to conceal the presence of alcohol. Defendant could have been afraid of the test itself and not the results; or he may have distrusted the procedure or the competency of the testers." (Footnotes omitted).

Although these are valid concerns, we do not believe they justify completely barring this refusal evidence in all cases. We believe that an analogy can be made between this refusal evidence and evidence of flight, which we discussed at some length in *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981). We said in *Payne*, 167 W.Va. at 266, 280 S.E.2d at 81, that "evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge." Similarly, as we indicated in *Adams*, 162 W.Va. at 155, 247 S.E.2d at 477, the refusal to take the breathalyzer is not direct evidence of driving under the influence, but "indicates defendant's fear of the test results and his own knowledge that he is guilty."

In *Payne*, 167 W.Va. at 267, 280 S.E.2d at 81, we recognized that there may be other reasons for the defendant's flight and that he "should be afforded an opportunity to explain his flight or absence from the jurisdiction." In much the same vein, we recognized in *Adams* that the defendant may have reasons other than a guilty conscience for declining the breathalyzer.

We also pointed out in *Payne*, 167 W.Va. at 267, 280 S.E.2d at 81, that the circum-

stances surrounding a defendant's flight or his explanation of his conduct may warrant the conclusion that it was not precipitated by guilty conscience or knowledge and that in this instance "evidence of flight should not be admitted." A companion conclusion can also be drawn with regard to the circumstances surrounding a defendant's refusal to take a breathalyzer.

In order to provide a fair mechanism for handling the admissibility of flight evidence, we established the right to an *in camera* hearing to address this issue and provided these guidelines which are contained in Syllabus Point 6 of *Payne:*

"In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect."

■ We believe that this procedure should also be followed in determining the admissibility of a defendant's refusal to take a breathalyzer test at a criminal trial for driving under the influence of alcohol. We, therefore, hold that in certain circumstances, evidence of a defendant's refusal to take a breathalyzer test will be admissible in a criminal trial for driving under the influence of alcohol as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect.

■ Finally, in *Payne*, we approved a cautionary instruction on the flight issue that should be given to the jury if requested.[6] We believe that a similar cautionary

---

**6.** The instruction approved in *Payne,* 167 W.Va. at 267–68, 280 S.E.2d at 81, reads as follows: " 'The Court instructs the jury that evidence of flight by the defendant is competent along

with other facts and circumstances, on the defendant's guilt, but the jury should consider any evidence of flight with caution since such

instruction is warranted where evidence of the refusal of a defendant to take a breathalyzer test has been admitted. The instruction should explain that this refusal evidence has only a slight tendency to prove guilt because, as we have previously observed, such refusal does not have a direct bearing on the issue of guilt.[7]

Although the State argues that the evidence of the defendant's guilt, excluding the testimony of his refusal to take the breathalyzer, was sufficient to support the verdict, we decline to address this issue. It appears that the State injected the refusal to take the breathalyzer in its case-in-chief. The defendant made a proper objection under *Adams* and at the conclusion of the State's case renewed his motion. It appears that the defendant elected to stand on this error, rather than offer any defense evidence. Consequently, the defense record was not developed, which would have a direct bearing on the harmless error issue.

We believe a fair resolution of this issue in the present case is to remand this case and give the defendant the benefit of the rule developed herein. On remand, the defendant is entitled to an *in camera* hearing to consider the admissibility of the defendant's refusal to take the breathalyzer test.

If the trial court concludes based upon the facts developed in the *in camera* hearing, that this evidence should have been excluded, then the defendant is entitled to a new trial. If the trial court reaches a contrary conclusion, then the conviction should be affirmed. This procedure is similar to what we have developed when at trial there has been a failure to conduct a mandatory hearing with respect to evidentiary matters. *Cf. State v. Tanner*, 175

W.Va. 264, 332 S.E.2d 277 (1985); *State v. Walls*, 170 W.Va. 419, 294 S.E.2d 272 (1982); *State v. Harris*, 169 W.Va. 150, 286 S.E.2d 251 (1982); *State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981); *State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659 (1980); *State v. Lawson*, 165 W.Va. 119, 267 S.E.2d 438 (1980); *State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979).

For the foregoing reasons, this case is remanded to the Circuit Court of Raleigh County for further proceedings consistent with this opinion.

Remanded.

---

evidence has only a slight tendency to prove guilt.

"'The jury is further instructed that the farther away the flight is from the time of the commission of the offense the less weight it will be entitled to, and the circumstances should be cautiously considered since flight may be attributed to a number of reasons other than consciousness of guilt.'"

7. We propose the following cautionary instruction where refusal evidence is admitted:

"The Court instructs the jury that evidence of the refusal of the defendant to take a breathalyzer test is competent evidence along with other facts and circumstances on the defendant's guilt. However, the jury should consider any evidence of the refusal to take a breathalyzer with caution since such evidence has only a slight tendency to prove guilt because the refusal may be attributed to a number of reasons other than the defendant's consciousness of guilt."