453 S.E.2d 317

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Brian HOPKINS, Defendant Below, Appellant.**

**No. 22079.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1994.

Decided Dec. 8, 1994.

Concurring in Part, Dissenting in Part, Opinion of Justice Cleckley Jan. 31, 1995.

Darrell V. McGraw, Jr., Atty. Gen., Shawn Anthony Taylor, Asst. Atty. Gen., Charleston, for appellee.

Warren R. McGraw, II, Beckley, for appellant.

NEELY, Justice:

Brian Hopkins appeals his conviction for shoplifting, third offense and the fines imposed as part of his sentence. On appeal, Mr. Hopkins argues that his conviction should be reversed because the circuit court improperly used his prior uncounseled shoplifting convictions to enhance his sentence. Because a sentencing court is not prohibited from considering a defendant's previous valid uncounseled misdemeanor convictions in sentencing him for a subsequent offense, we affirm his conviction and the fines imposed as part of his sentence.

On 26 October 1992, Mr. Hopkins allegedly shoplifted two cigarette packs from the Food–4–Less grocery store in Beckley, West Virginia. Richard Pyatt, who is employed by the store as a security officer, saw Mr. Hopkins pick up and put two cigarette packs in his pocket. After two persons who accompanied Mr. Hopkins noticed Mr. Pyatt watching them, Mr. Hopkins left the cigarette sales area and walked down and up an aisle. Finally Mr. Hopkins, without paying, walked through the check-out counter, after which he was stopped by Mr. Pyatt. When Mr. Pyatt asked Mr. Hopkins where the two cigarette packs were, Mr. Hopkins responded that he did not have any cigarettes. When Mr. Pyatt told Mr. Hopkins the brands of cigarettes, Mr. Hopkins said, "Man, you're slick; I didn't see you. How did you see me do that? Where were you at?" The persons who accompanied Mr. Hopkins told Mr. Pyatt that the cigarettes were in aisle nine, the makeup and hair spray area.

Mr. Pyatt then told Mr. Hopkins he was under arrest for shoplifting. After Mr. Hopkins showed Mr. Pyatt the cigarettes' location, Mr. Hopkins said, "Okay, man, you got your stuff back; let me go." Mr. Hopkins followed Mr. Pyatt to the store's security office where Mr. Hopkins' picture was taken with the cigarettes. Without advising Mr. Hopkins of his *Miranda* rights [1], Mr. Pyatt questioned Mr. Hopkins, who responded by giving a false name and address.[2] Later as they were returning to the store's front, Mr. Hopkins walked out of the store. The Beckley City Police Department, who were called when Mr. Hopkins was first stopped, recognized Mr. Hopkins from the picture and arrested him several days later.

Mr. Hopkins was charged and convicted by a jury of third offense shoplifting. At trial the State introduced evidence of Mr. Hopkins' three prior convictions for shoplifting, two of which occurred in 1987, and one in 1988. Mr. Hopkins pled guilty to both 1987 convictions and pled *nolo contendere* to the 1988 conviction. For each prior ·conviction, the State presented a witness who had seen Mr. Hopkins shoplift and the final judgment sheet.

After the jury found Mr. Hopkins guilty, Mr. Hopkins was sentenced to a term of 1 to 10 years, and fined $500 for the conviction, $50 as a mandatory penalty, payable to the mercantile establishment, and the costs of the proceeding.

Mr. Hopkins appeals his conviction to this Court asserting the following assignments of error: (1) Mr. Hopkins' statements to Mr. Pyatt were improperly admitted into evidence; (2) The circuit court improperly failed to sever evidence of Mr. Hopkins' prior shoplifting convictions; (3) The circuit court improperly allowed uncounseled convictions to

---

1. *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. In the security office, Mr. Pratt completed some "paper work" with Mr. Hopkins' answers. However, none of this "paper work" was admitted at trial.

enhance the sentence; and (4) The $50 mandatory fine is an unconstitutional taking without due process.

### I

■ Mr. Hopkins alleges that because Mr. Pyatt failed to advise him of his *Miranda* rights, his statement to Mr. Pyatt should not have been admitted. According to Mr. Pyatt, shortly after he stopped and asked Mr. Hopkins about the cigarettes[3] and Mr. Pyatt told Mr. Hopkins the brands of the cigarettes allegedly taken, Mr. Hopkins said, "Man, you're slick; I didn't see you. How did you see me do that? Where were you at?" Because Mr. Hopkins objected to having the jury consider his statement to Mr. Pyatt, the circuit court held an *in camera* hearing. During the hearing, Mr. Pyatt testified that Mr. Hopkins was arrested after his "[m]an, you're slick ..." statement and that Mr. Hopkins was not restrained in any way. Mr. Pyatt said that after they returned to the store's selling area, Mr. Hopkins who had followed him around the store and to the security office, simply walked out the store's front door before the police arrived.

The circuit court, first noting that *Miranda* warnings are required before an interrogation, found in this case that "there was no interrogation ... of the defendant by this witness." The circuit court found the statement to be spontaneous and not the result of an interrogation. Mr. Hopkin's objection to the use of his statement was not renewed after the circuit court made his decision.

We have long held that *"Miranda* warnings are required whenever a suspect has been formally arrested or subject to custodial interrogation, regardless of the nature or severity of the offense." Syl. pt. 1, *State v. Preece*, 181 W.Va. 633, 383 S.E.2d 815 (1989).[4] In *State v. Preece*, the sole issue was when a traffic investigation escalated into an accusatory custodial environment, requiring *Miranda* warnings. *State v. Preece* held that *Miranda* warnings are required when "a reasonable person in the suspect's position would have considered his or her freedom of action curtailed to a degree associated with a formal arrest." Syl. pt. 3, in part, *State v. Preece*.

Recently the Supreme Court affirmed that *"Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Stansbury v. California*, ⸺ U.S. ⸺, ⸺, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293, 299 (1994) (per curiam), *quoting, Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 711, 50 L.Ed.2d 714, 714 (1977) (per curiam). In *Stansbury*, the Supreme Court was concerned that the lower court's decision finding no custodial interrogation was premised on the interrogating "officer's subjective view that the individual under questioning is a suspect, if undisclosed ... [or] if an officer's undisclosed assessment is that the person being questioned is not a suspect." ⸺ U.S. at ⸺⸺, 114 S.Ct. at 1529–30, 128 L.Ed.2d at 299–300. Rather, the Supreme Court's "decisions make clear that the initial determination of custody depends on *the objective circumstances of the interrogation,*

---

3. Although the record indicates that Mr. Pyatt stopped Mr. Hopkins beyond the store's checkout, Mr. Pyatt testified that he did not touch Mr. Hopkins or restrain him in any way. The record does not reflect if Mr. Pyatt was wearing a security guard uniform or other employee identification.

4. In *State v. Muegge*, 178 W.Va. 439, 444, 360 S.E.2d 216, 221 (1987) (questionnaire completed by a private security guard after an alleged shoplifter refused to answer questions and requested his lawyer should not have been admitted), we stated:

While no constitutional warnings are required to establish the admissibility of purely private conversations, ... we hold that the procedural

safeguards protecting the constitutional right not to be compelled to be a witness against oneself in a criminal case apply whenever a citizen is subject to custodial interrogation pursuant to statutory authority. [Footnote omitted.]

The State argues that most jurisdictions do not require private security guards to give *Miranda* warnings and urges that *Muegge* be overruled. However, the facts of this case do not require us to address the State's argument and we decline to do so.

Because Mr. Hopkins did not object to Mr. Pyatt's testimony about the false information given by Mr. Hopkins in the security office, we decline to consider whether this information should have been suppressed because the *Miranda* warnings were omitted.

not on the subjective views harbored by either the interrogating officers or the person being questioned." [Emphasis added.] —— U.S. at ——, 114 S.Ct. at 1529, 128 L.Ed.2d at 298.

In *Stansbury*, the Supreme Court did not decide whether the *Miranda* warnings were required under *Stansbury*'s circumstances, but rather, focused on when such warnings are required and the factors to be considered.[5] The defendant in *Stansbury* was considered a potential witness and not the suspect in a homicide investigation concerning the death of a 10-year-old girl. At about 11:00 p.m., four plain clothes officers went to Mr. Stansbury's trailer and with three officers surrounding the door, one knocked. The officers told Mr. Stansbury they "were investigating a homicide to which Stansbury was a possible witness and asked if he would accompany them to the police station to answer some questions." —— U.S. at ——, 114 S.Ct. at 1527, 128 L.Ed.2d at 297. Mr. Stansbury agreed to be interviewed and rode to the police station in the front of the police car. Without informing Mr. Stansbury of his *Miranda* rights, the police questioned him about his activities on the night of the murder. After Mr. Stansbury informed the police that he left his trailer "about midnight in his housemate's turquoise, American-made car" (—— U.S. at ——, 114 S.Ct. at 1528, 128 L.Ed.2d at 297), the officers, aware of a witness' similar car description, asked the defendant about his prior convictions, which Stansbury described and which included rape, kidnapping and child molestation. At that point, Mr. Stansbury stopped the questioning and an officer advised the defendant of his *Miranda* rights. Thereafter, Mr. Stansbury "declined to make further statements, requested an attorney and was arrested." —— U.S. at ——, 114 S.Ct. at 1528, 128 L.Ed.2d at 297.

The Supreme Court found that numerous statements in the California Supreme Court's opinion "are open to the interpretation that

the court regarded the officers' subjective beliefs regarding Stansbury's status as a suspect (or nonsuspect) as significant in and of themselves, rather than as relevant only to the extent they influenced the objective conditions surrounding his interrogation." —— U.S. at ——, 114 S.Ct. at 1530, 128 L.Ed.2d at 300. Although the State acknowledged that subjective opinions "do not bear upon the question [of] whether Stansbury was in custody, for the purposes of *Miranda*," the Supreme Court remanded the case to the California Supreme Court to determine if the objective circumstances show defendant to have been in custody during the entire interview. —— U.S. at ——, 114 S.Ct. at 1531, 128 L.Ed.2d at 301.

In the case now before this Court, Mr. Hopkins was stopped by a private security guard, in the public area of a grocery store, was not touched or restrained and was briefly asked about the cigarettes. His "[m]an you're slick . . ." statement was made immediately after the private security guard told him the names of the cigarette brands.

*Miranda* also acknowledged that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. In *Rhode Island v. Innis*, 446 U.S. 291, 300–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 307–08 (1980), the Supreme Court discussed what constitutes questioning:

> [T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the

---

5. Stansbury was convicted by a jury of "first-degree murder, rape, kidnapping, and lewd act on a child under the age of 14, and [the jury] fixed the penalty for first-degree murder at death." —— U.S. at ——, 114 S.Ct. at 1028, 128 L.Ed.2d at 297. The Supreme Court found that

the California Supreme Court, instead of focusing on the officers' subjective and undisclosed suspicions, should have examined the objective circumstances and remanded for such consideration.

suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response. [Footnotes omitted.]

■ In Syl. pt. 2, *State v. Rowe*, 163 W.Va. 593, 259 S.E.2d 26 (1979), we stated:

Volunteered admissions by a defendant are not inadmissible because the procedural safeguards of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were not followed, unless the defendant was both in custody and being interrogated at the time the admission was uttered.

*See* Syl. pt. 6, *State v. Garrett*, 182 W.Va. 166, 386 S.E.2d 823 (1989) (voluntary statements made by a defendant before being placed in custody and without any form of questioning are admissible); *State v. Stewart*, 180 W.Va. 173, 375 S.E.2d 805 (1988) (per curiam); Franklin D. Cleckley, *Handbook of West Virginia Criminal Procedure* I–454 (2nd ed. 1993) ("*Miranda* warnings are not required where a voluntary, spontaneous statement is given which is not the product of questioning or its functional equivalent. [Citations omitted.]").

In this case the record shows that Mr. Hopkins' freedom of action was not "curtailed to a degree associated with a formal

arrest." Syl. pt. 3, in part, *State v. Preece*. Mr. Hopkins was not in custody. His statement was made in a public area of a grocery store to a security guard. Mr. Hopkins was not touched or in any way restrained. In these circumstances, we find that a reasonable person would not have felt "the compulsive aspect of custodial interrogation." *Stansbury*, —— U.S. at ——, 114 S.Ct. at 1529, 128 L.Ed.2d at 299, *quoting*, *Beckwith v. United States*, 425 U.S. 341, 346–47, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1, 1 (1976).

In addition, Mr. Hopkins' statements were spontaneous—a remark to Mr. Pyatt's information about the brands of cigarettes. When Mr. Hopkins said, "[m]an, you're slick . . . ," he was not answering the question being asked, to-wit: "Where are the cigarettes?", no interrogation was occurring and Mr. Hopkins' freedom of action was not curtailed to the degree associated with a formal arrest.

In Syl. pt. 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978), we stated:

A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.

*Accord* Syl. pt. 4, *State v. Preece*, 181 W.Va. 633, 383 S.E.2d 815 (1989); Syl. pt. 3, *State v. George*, 185 W.Va. 539, 408 S.E.2d 291 (1991). Given the evidence concerning Mr. Hopkins' statements and their context, we find that the circuit court's decision that the statements were spontaneous and not the result of an interrogation was not "plainly wrong or clearly against the weight of the evidence."

II

■ Mr. Hopkins' second assignment of error is that the circuit court improperly failed to sever evidence of Mr. Hopkins' previous shoplifting convictions.[6] *W.Va.Code* 61–3A–3(c) [1981] states:

*Third offense convictions.*—Upon a third or subsequent shoplifting conviction, regardless of the value of the merchandise,

---

6. *W.Va.Code* 61–3A–1(a) [1981] states, in pertinent part:

A person commits the offense of shoplifting if, with intent to appropriate merchandise without paying the merchant's stated price for

the merchandise, such person, alone or in concert with another person, knowingly:

(1) Conceals the merchandise upon his or her person or in another manner. . . .

the defendant shall be guilty of a felony and shall be fined not less that five hundred dollars nor more than five thousand dollars, and shall be imprisoned in the penitentiary for one to ten years. At least one year shall actually be spent in confinement and not subject to probation.[7]

In *State v. Cozart,* 177 W.Va. 400, 402 n. 1, 352 S.E.2d 152, 153 n. 1 (1986) discussing whether the State improperly admitted evidence of a defendant's two prior convictions for driving under the influence (DUI), we said: "Obviously, where a prior conviction is a necessary element of the current offense charged or is utilized to enhance the penalty after a jury finding that the defendant has committed such prior offense, it is admissible for jury purposes and [*State of West Virginia v.*] *McAboy* [160 W.Va. 497, 236 S.E.2d 431 (1977) ] is not applicable." *See State v. Barker,* 179 W.Va. 194, 199 n. 12, 366 S.E.2d 642, 647 n. 12 (1988); *State v. Wilkinson,* 181 W.Va. 126, 381 S.E.2d 241 (1989) (per curiam).

In this case, Mr. Hopkins was charged with shoplifting, third offense, and under the *Code,* the State was required to prove at least two prior convictions for shoplifting. Because evidence of the prior convictions is a necessary element of the crime charged, the evidence is admissible for jury purposes.

### III

■ Mr. Hopkins next argues that his previous uncounseled convictions should not have been used to enhance his sentence. Although Mr. Hopkins' motion for acquittal made after testimony was closed was based on the alleged impermissible use of his previous convictions, Mr. Hopkins did not object to their admission and did not present any evidence showing that his previous convictions were invalid. In an *in camera* hearing, the State presented evidence showing that Mr. Hopkins had pled guilty in two of the

cases and had pled *nolo contendere* to the other. In addition, Mr. Hopkins also pled guilty to a previous charge of third offense shoplifting in which he was represented by counsel.

■ The State argues that any error was waived by the defense's failure to object. "Error in the admission of testimony to which no objection was made will not be considered by this Court on appeal or writ of error, but will be treated as waived." *State v. Wheeler,* 187 W.Va. 379, 386, 419 S.E.2d 447, 454 (1992). *Accord* Syl. pt. 7, *State v. Davis,* 176 W.Va. 454, 345 S.E.2d 549 (1986); Syl. pt. 4, *State v. Michael,* 141 W.Va. 1, 87 S.E.2d 595 (1955). Because a timely objection was not made, the State was denied the opportunity to ask the witnesses about Mr. Hopkins' guilty and *nolo contendere* pleas and any waiver of rights. Once the motion to dismiss was made the State did supplement the record with information concerning Mr. Hopkins' guilty plea to another third offense shoplifting where he was represented by counsel.

Mr. Hopkins alleges that a dismissal is required by our holding in *State v. Armstrong,* 175 W.Va. 381, 332 S.E.2d 837 (1985).[8] However, Mr. Hopkins' reliance is misplaced because *Armstrong* was based on *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), which was overruled by the U.S. Supreme Court in *Nichols v. U.S.,* — U.S. —, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). In *Nichols,* the Supreme Court allowed enhancement of the defendant's sentence under the United States Federal Sentencing Guidelines based on the defendant's uncounseled misdemeanor conviction for DUI. The Supreme Court noted:

Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the [Federal] Sentencing Guidelines, or recidivist statutes which

---

7. *W.Va.Code* 61–3A–3(c) was amended in 1994 to provide for home detention as an alternative sentence.

8. Syl. pt. 1, *State v. Armstrong,* 175 W.Va. 381, 332 S.E.2d 837 (1985), states:

Under the sixth amendment of the federal constitution and article III, section 14 of the West

Virginia Constitution, unless an individual convicted of a misdemeanor was represented by counsel or knowingly and intelligently waived the right to counsel, such prior conviction may not be used to enhance a sentence of imprisonment for a subsequent offense.

are common place in state criminal laws, do not change the penalty imposed for the earlier conviction. As pointed out in the dissenting opinion in *Baldasar*, "[t]his Court consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant." [Citations omitted.]
*Nichols*, —— U.S. at ——, 114 S.Ct. at 1927, 128 L.Ed.2d at 754.

In overruling *Baldasar*, the Supreme Court noted that *Baldasar* was a *"per curiam* opinion" that "provided no rationale for the result. . . ." *Nichols*, —— U.S. at ——, 114 S.Ct. at 1926, 128 L.Ed.2d at 752. The Supreme Court also rejected the defendant's request for a warning that the conviction might be used for enhancement purposes be required because: (1) Most misdemeanor convictions "take place in police or justice courts which are not courts of record;" (2) A "drastic change in the procedures" would be needed "to memorialize any such warning;" and (3) The lack of clarity concerning such a warning's degree of specificity.[9] The Supreme Court concluded, "[a]ccordingly we hold, consistent with the Sixth and Fourteenth Amendments of the Constitution, that an uncounseled misdemeanor conviction, valid under *Scott* [*v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979)] because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." —— U.S. at ——, 114 S.Ct. at 1928, 128 L.Ed.2d at 755.

Our holding in *Armstrong* relied upon the now overruled *Baldasar*. *Armstrong* said that "it is well established that if no imprisonment could have been imposed for a particular misdemeanor conviction for the reasons stated in *Argersinger* [*v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)] and *Scott*, then that conviction may not be used as part of the basis for imprisonment under an enhancement statute. *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980)." *Id.* 175 W.Va. at 385,

332 S.E.2d at 841. Although *Armstrong* claims to be based on both the *U.S. Constitution* and the *West Virginia Constitution,* its reasoning was based on *Baldasar,* which according to the Supreme Court created "a conflict among state courts as well as Federal Courts of Appeals. [Footnotes omitted.]" *Nichols*, —— U.S. at ——, 114 S.Ct. at 1925, 128 L.Ed.2d at 751. Because we find the Supreme Court's holding in *Nichols* persuasive, we overrule *Armstrong* and hold that under the sixth amendment to the *U.S. Constitution* and article III, section 14 of the *West Virginia Constitution,* "an uncounseled misdemeanor conviction, valid under *Scott,* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." *Nichols*, —— U.S. at ——, 114 S.Ct. at 1928, 128 L.Ed.2d at 755.

Because Mr. Hopkins' previous convictions for shoplifting are valid under *Scott,* we find these convictions are also valid when used to enhance punishment in this case and, therefore, reject Mr. Hopkins' third assignment of error.

### IV

■ Finally, Mr. Hopkins argues that his $50.00 fine is an unconstitutional taking without due process because the statute "allows for the court to presume that the value of the merchandise is that which is stated by the mercantile establishment." Mr. Hopkins also maintains that because the merchandise was recovered, the merchant was unjustly enriched.

In addition to the minimum $500 fine and prison term imposed by *W.Va.Code* 61–3A–3(c) [1994] for third offense shoplifting, subsection (d) of the same *Code* section imposes a mandatory fine requiring "the defendant to pay a penalty to the mercantile establishment involved in the amount of fifty dollars, or double the value of the merchandise involved, whichever is higher." *W.Va.Code* 61–

9. *Nichols* is part of a line of cases clarifying the issues surrounding the use of previous uncounseled convictions for enhancement purposes. *See Parke v. Raley,* 506 U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1993) (affording previous uncounseled convictions the presumption of regularity which could be overcome by a defendant's

showing the absence of a valid waiver); *Curtis v. U.S.,* —— U.S. ——, ——, 114 S.Ct. 1732, 1738, 128 L.Ed.2d 517, 528 (1994) (declining "to extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel established in *Gideon"*).

3A–3(d) [1994].[10] Mr. Hopkins' first argument is without merit because the value of the merchandise was never an issue. Mr. Hopkins was fined $50 which is clearly higher than the value of two cigarette packs and *W.Va.Code* 61–3A–3(d) [1994] does not prescribe how the value of the merchandise is to be established. A similar argument was rejected in *State v. Day*, 191 W.Va. 641, 447 S.E.2d 576 (1994) (per curiam).

■ Mr. Hopkins' unjust enrichment argument is also without merit because it is based in civil law and not in criminal law. Although deference is given to the legislature's determination of the criminal penalties necessary to achieve both the punitive and remedial goals, the legislature's power is limited by the eighth amendment to the U.S. *Constitution*, which is applicable to the states through the due process clause of the fourteenth amendment. The eighth amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *See Alexander v. U.S.*, —— U.S. ——, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) (for eighth amendment purposes, RICO's forfeiture provisions are no different than a traditional fine); *Austin v. U.S.*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (forfeiture provisions under 21 U.S.C. §§ 881(a)(4) and (a)(7) are a monetary punishment subject to the eighth amendment).

*W.Va.Code* 61–3A–3(d) [1994]'s mandatory fine payable to the mercantile establishment where the items were shoplifted is a form of statutory restitution that considers the transactional costs of prosecuting a defendant. We find nothing in the record to indicate that Mr. Hopkins' fines are excessive, shocking,

violative of fundamental fairness, disproportionate, without penological justification or unnecessarily painful.

For the above stated reasons, we affirm the decision of the Circuit Court of Raleigh County.

Affirmed.

CLECKLEY, Justice, concurring, in part, and dissenting.

### I.

### MIRANDA RIGHTS

In *State v. Hambrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977), we adopted *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as part of our state constitutional jurisprudence which established a prophylactic procedural shield to support every citizen's Fifth Amendment right against compelled self-incrimination. Part of this shield is the requirement that, prior to custodial interrogation, the police must advise the individual of his or her right to silence and his or her right to an attorney.[1] The majority seeks to avoid application of this important procedural right by holding that the confrontation between the defendant and the security officer did not amount to "interrogation" or "custody."

Although I believe the majority is probably wrong as to both points, out of deference to the trial court, I concur as to the ruling on *Miranda* warnings. As an appellate court we are to give deference to factual findings of the trial court, and I cannot conclude that the trial court was clearly wrong as to custody. On the other hand, the trial court and the

---

**10.** Both subsections (c) and (d) of *W.Va.Code* 61–3A–3 were unchanged by the 1994 amendments. *W.Va.Code* 61–3A–3(d) [1994] provides:

> *Mandatory penalty.*—In addition to the fines and imprisonment imposed by this section, in all cases of conviction for the offense of shoplifting, the court shall order the defendant to pay a penalty to the mercantile establishment involved in the amount of fifty dollars, or double the value of the merchandise involved, whichever is higher. The mercantile establishment shall be entitled to collect such mandatory penalty as in the case of a civil judgment. This penalty shall be in addition to the mercan-

tile establishment's rights to recover the stolen merchandise.

**1.** Of course, *Miranda* itself addressed "custodial interrogation[s]." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Its approach properly balanced the likelihood of compelled self-incrimination against the importance of police questioning, and its result intelligently demarcated only those situations in which the state so dominated the isolated detainee that any serious questions were inherently coercive. Note, *Custodial Engineering: Cleaning Up the Scope of Miranda Custody During Coercive Terry Stops*, 108 Harv.L.Rev. 665, 676 (1995).

majority's factual and legal conclusion that there was no interrogation is clearly wrong. Of course, as the majority states, if there is no custody, the mere existence of interrogation is not sufficient to trigger *Miranda* warnings. Nevertheless, unless the opinion of the majority is challenged, I believe that no trial court would ever feel obligated, short of actual arrest, to find custody for *Miranda* purposes. Establishing bright line rules for custodial interrogation determinations is not always desirable, but there are some well recognized legal principles that must be honored by the courts, including us.[2]

### A.

#### Custody

*Miranda* defines "custody" as whether a person is "deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Custodial interrogation is ordinarily conducted by officers who are " 'acutely aware of the potentially incriminating nature of the disclosures sought.' " *Minnesota v. Murphy*, 465 U.S. 420, 429, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409, 421 (1984), *quoting Garner v. United States*, 424 U.S. 648, 657, 96 S.Ct. 1178, 1184, 47 L.Ed.2d 370, 379 (1976). This custodial setting is thought to contain "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 466, 86 S.Ct. at 1624, 16 L.Ed.2d at 719. In this case, the security officer's reasons for stopping and questioning the defendant were evident. The security officer testified that he observed the defendant remove from the shelves and place in his pocket two packs of cigarettes. This motivated the security officer to confront the defendant as he attempted to leave the business premises and question him.

As the majority opinion suggests, the question whether a person is in custody for purposes of *Miranda* is answered by the "objective circumstances" of the interrogation. It does not depend on the subjective view of either the person interrogated or the officers who conduct the interrogation. *See Stansbury v. California*, —— U.S. ——, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam). Under *Stansbury*, the officer's intent not to arrest does not in itself affect whether a reasonable person would have thought himself arrested and thus would not affect a determination on *Miranda* custody.

Thus, there are several objective factors I would consider crucial in determining whether there was custody. *See United States v. Griffin*, 922 F.2d 1343 (8th Cir.1990) (detailed discussion of relevant factors which includes most of those listed below). The first and most important factor is whether the officer informed the suspect at the time of questioning that the questioning was voluntary, that the suspect was free to leave, or that the suspect was not under arrest. Although the officer did not tell the defendant that he was under arrest or that he was not free to walk away, the evidence shows that he did not tell the defendant he could.[3] It

**2.** It must be remembered that *Miranda* is the quintessential bright-line rule. Note, *Custodial Engineering: Cleaning Up the Scope of Miranda Custody During Coercive Terry Stops*, 108 Harv. L.Rev. at 676; George E. Dix, *Promises, Confessions, and Wayne LaFave's Bright Line Rule Analysis*, 1993 U.Ill.L.Rev. 207, 230. In my judgment, opinions like the one authored by the majority blur the bright-line rule that is fundamental to the success of the doctrine.

**3.** A simple statement by the officer informing the defendant he was not under arrest and was free to leave would usually be sufficient to preclude a finding of custody and would most definitely circumvent a finding of *de facto* arrest. *See State v. Wyant*, 174 W.Va. 567, 328 S.E.2d 174 (1985); *State v. Stanley*, 168 W.Va. 294, 284 S.E.2d 367 (1981). Most disputed cases concerning custody arise when there is silence on the part of the investigating officer and the questioning takes place in a public setting. Already in this Term, we have spent considerable time defining and determining custody in three separate cases. The easiest case we dealt with this Term was *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994), where we implied in note 10 that there was no custody. Significantly, in *Farley*, the police advised the defendant that he was not under arrest and was free to leave. *See also California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (defendant was told he was not under arrest and was released after confessing); *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (defendant was informed that he was not under arrest and he left the station without hindrance after he confessed).

should come as no surprise that the court in *Griffin* states "the absence of police advisement that the suspect is not under formal arrest, or that the suspect is at liberty to decline to answer questions, has been identified as an important indicium of the existence of a custodial setting." 922 F.2d at 1350. Similarly, even under the "objective circumstances" rule articulated in *Stansbury*, the Supreme Court stated that the officer's subjective view of custody is relevant "but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave." —— U.S. at ——, 114 S.Ct. at 1530, 128 L.Ed.2d at 300.

The second factor is the absence of restraints. There were no physical restraints in this case, and this factor weighs heavily for the police.

The third factor is whether the suspect initiated contact with the authorities or did the suspect voluntarily acquiesce to police requests to respond to questions. Certainly, it was the security officer who stopped the defendant; and, although the defendant somewhat engaged the police in conversation, it is clear the defendant did not voluntarily agree to this stop and questioning.

The fourth factor deals with the tactics used, and I find nothing to suggest any misconduct on the part of the officer. While relevant, police tactics are not considered as crucial in determining custody. "An interrogation can still be custodial even though no strong-arm tactics are used, but the absence of such tactics is a factor which can assist us in reaching an objective conclusion that the suspect could not have associated the questioning with formal arrest." *Griffin*, 922 F.2d at 1351. (Citations omitted).

The fifth factor deals with whether the atmosphere of the questioning was dominated by the police. Any fair and objective

Rather than evaluating the specific facts of each custody issue on a case-by-case basis, I believe judicial time and resources could be better spent. These questions take up an inordinate and disproportionate amount of time in trial and appellate courts. I see no reason why this Court should not adopt a bright-line rule mandating the police to advise a defendant that he is not under arrest, that he is not required to answer any questions, and that he may leave at any time. Where there is noncompliance with this proposed requirement, we should presume that the custody component of *Miranda* is satisfied and move on to the issue of whether there was interrogation. Any reasonable doubt as to custody should be resolved in favor of the defendant. Although the presumption would be rebuttable, its mere existence should facilitate decisionmaking on this issue and would prompt the police to more readily comply with the *Miranda* mandates. History has shown that the giving of *Miranda* warnings has not undermined the effectiveness of law enforcement. *See* White, *Defending Miranda: A Reply to Professor Caplan*, 39 Vand. L.Rev. 1 (1986) (the great weight of empirical evidence supports the conclusion that *Miranda's* impact on the police's ability to obtain confessions has not been significant). Today's majority decision adds to the already uncertain breadth of the custody requirement by jeopardizing the bright-line nature of *Miranda*, which has been vital to its success in West Virginia. It must be emphasized that what I propose is not revolutionary and it should come as no surprise to the author of the majority opinion.

More than eleven years ago in a unanimous opinion written by Justice Neely, he stated:

"We do not question the *bona fides* of the police in this case. It is, however, difficult for an appellate court to make principled decisions based on distinctions between when the subjective purpose of interrogation is establishing guilt or allowing a suspect to prove innocence. *By establishing a clear rule that police investigatory interrogations without presentment to a magistrate are allowable only when the suspect is expressly informed that he is not under arrest, is not obligated to answer any questions and is free to go*, we hope to establish a system sufficiently flexible that the innocent are allowed to prove their blamelessness and the police are able effectively and legally to interrogate those who are ultimately proven guilty." *State v. Mays*, 172 W.Va. 486, 489, 307 S.E.2d 655, 658 (1983). (Emphasis added).

Justice Neely was correct in *Mays*, and I merely seek to enforce its holding. Like most bright-line rules, *Miranda* intentionally precludes case-by-case adjudications. The additional warnings benefit the detainee by limiting the actual coercion imposed. They not only reassure the detainee, but they remind the officer that the stop is only a limited seizure. Most importantly, as Justice Neely states above, they would offer this Court an objective starting point for a Fifth Amendment review by regulating the conditions and tone surrounding the police inquiry. Note, *Custodial Engineering: Cleaning Up the Scope of Miranda Custody During Coercive Terry Stops*, 108 Harv.L.Rev. at 682.

reading of what took place indicates that this was exclusively the security officer's show. The statements made by the defendant were all in response to the interrogation of the security officer. This leads to the sixth factor of whether the defendant was placed under arrest at the termination of questioning. The majority opinion concludes that the defendant was orally placed under arrest once the security officer was told where the cigarettes had been placed. Although the defendant later "escaped," it is apparent the defendant understood that he was under arrest. After the security officer retrieved the cigarettes, the defendant stated: "Okay, man you got your stuff back; let me go."

. I believe that considering all the objective facts and circumstances of this interrogation, a reasonable person would conclude that the defendant was in custody within the contemplation of *Miranda*. The facts of this case are distinguishable from those in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), where the Supreme Court held "the roadside questioning of a motorist detained pursuant to a routine traffic stop" did not amount to "custodial interrogation." Syllabus Point 2, in part. As Justice Marshall suggested, "detention of a motorist pursuant to a traffic stop is presumptively temporary and brief. The vast majority of roadside detentions last only a few minutes." 468 U.S. at 437, 104 S.Ct. at 3149, 82 L.Ed.2d at 333. Also, the Supreme Court stated the "atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself, and in the subsequent cases in which we have applied *Miranda*." 468 U.S. at 439, 104 S.Ct. at 3149, 82 L.Ed.2d at 334. (Citation omitted). In the case *sub judice*, the purpose of the stop was to investigate criminal conduct that the security officer had "probable cause" to know had taken place. There was no chance this defendant would be released without being charged.

As I suggested earlier, however, resolution of this issue falls initially in the hands of the trial court; and, under the guiding principles of judicial restraint, an appellate court should not interfere as to factual determinations unless the lower court was clearly erroneous. *See State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994) (legal conclusions involved in suppression determinations reviewed *de novo*; factual determinations informing those legal conclusions reviewed under clearly erroneous standard). Under these facts, I cannot make such a pronouncement. I am comforted in this conclusion by the awareness that most courts conclude that absent special circumstances (such as drawn guns or the use of physical force), interrogation in a public place is not "custodial." [4]

### B.

#### Interrogation

In addition to the custody requirement, the police also must be interrogating the suspect before the need for *Miranda* warnings arises. The facts as taken from the majority's opinion state:

> "Finally Mr. Hopkins, without paying, walked through the check-out counter, after which he was *stopped* by Mr. Pyatt. When Mr. Pyatt *asked* Mr. Hopkins where the two cigarette packs were, Mr. Hopkins responded that he did not have any cigarettes. *When Mr. Pyatt told Mr. Hopkins the brands of cigarettes, Mr. Hopkins said, 'Man, you're slick; I didn't see you. How did you see me do that? Where were you at?'*" (Emphasis added).

Based on the above, the majority concludes there was no interrogation. In my opinion, the conclusion that no interrogation took place is clearly wrong both legally and commonsensically. If asking a stopped shoplifting suspect where the shoplifted merchandise is located does not amount to interrogation by a security officer, it is hard to imagine what would, short of the third degree.

In analyzing this issue, I believe there are two problems with the majority's reasoning.

---

4. It would have been more logical had the majority based its decision on the notion that some spontaneous, on-the-scene questioning resembles the general field inquiry that *Miranda* itself ex- cepted from any warning requirement. *See Miranda*, 384 U.S. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725.

First, in assessing whether there was interrogation, a court should look at the entire conversation, not just one isolated sentence. The majority seems concerned only with the latter portion of the above statement that was emphasized. This approach seems to miss the forest for the trees. The better way to assess the facts under an "objective reasonable" standard is to view the exchange in its full context, with an eye toward whether incriminating information from the suspect is being sought in light of all the circumstances. Artificial division in the sequence of a conversation does not aid a court's evaluation of whether interrogation existed. It seems far better in these cases to frame the interrogation determination in a larger perspective, evaluating all relevant parts of the conversation rather than any one sentence in isolation.

Second, even if we looked in isolation to the emphasized portion of the conversation, the only reasonable conclusion is that the response came as the result of interrogation. It must be remembered that the defendant's initial denial was followed by an effort by the security officer to identify the merchandise. Obviously, the security officer was trying to demonstrate his knowledge of the theft to convince the defendant to come clean. His statement seems clearly to be an interrogation under *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 307–08 (1980):

> "We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning *or its functional equivalent.* That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." (Emphasis added).

The majority suggests that the defendant's statements were volunteered. While I agree with the notion that volunteered statements are not barred by the fact that they are not preceded by *Miranda* warnings, a volunteered statement is usually the exception, not the rule. Normally, a volunteered statement is (a) where the suspect walks into the police station and immediately gives a confession, *see Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *State v. Stewart,* 180 W.Va. 173, 375 S.E.2d 805 (1988); (b) where police comments are not directed to the suspect, *see Rhode Island v. Innis, supra;* (c) where the police are merely present, but not directly involved in the oral exchange, *see Arizona v. Mauro,* 481 U.S. 520, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987); or (d) where the suspect in response to greetings or salutations to law enforcement officers makes an inculpatory statement, *see State v. McFarland,* 175 W.Va. 205, 332 S.E.2d 217 (1985). Not only did the police ask a specific question in this case, but after the defendant's denial, the officer followed it with a detailed description of what he believed the defendant stole.

Viewed in this light, I have no doubt that what took place was interrogation in its classical and traditional form. *See United States v. Green,* 776 F.Supp. 565 (D.D.C.1991) (threat that drugs found in the car would be attributed to the defendant constituted interrogation).

II.

SENTENCE ENHANCEMENT

Under Part II of the opinion, the majority concludes that prior shoplifting convictions are elements of the West Virginia shoplifting enhancement provision, W.Va.Code, 61–3A–3(c) (1994), and, as such, are admissible before the jury in this shoplifting case. Thus, I dissent.

The majority cites *State v. Cozart,* 177 W.Va. 400, 352 S.E.2d 152 (1986), a DUI enhancement case, for this proposition. I think this case is wrong. Allowing the admission of prior convictions in this case on the merits, ostensibly as elements, conflicts with all the policies behind Rule 404(b) of the

West Virginia Rules of Evidence. *See State v. McGinnis,* —— W.Va. ——, 455 S.E.2d 516 (1994). Unquestionably, a jury will be more inclined to convict on the underlying charge if they know the defendant has been twice convicted of similar conduct. In order to avoid application of Rule 404(b), the majority suggests that the two prior convictions are material elements of the present crime. *See United States v. Tran Trong Cuong,* 18 F.3d 1132 (4th Cir.1994) (the prohibitions of Rule 404(b) against collateral evidence are inapplicable when evidence is being offered to prove essential elements of the charge). I emphatically reject this holding as a torture of sound legal reasoning. The prior convictions are not elements of the current charge; they are elements of penalty enhancement.[5]

The trial in these cases should be bifurcated. The jury should first determine guilt on the underlying charge; and then if, and only if, guilt is found, evidence should be received of the prior convictions for enhancement purposes. This is the way legislative directives operate under our other recidivist statutes. *See* W.Va.Code, 61–11–18 (1994); W.Va. Code, 61–11–19 (1943); II Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* 453 (1993). This suggested procedure ensures fairness and avoids Rule 404(b) problems and is the only reasonable way that the DUI and shoplifting enhancement statutes can be construed.

Finally, although I would not have voted with the majority in *Nichols v. United States,* —— U.S. ——, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), I am not particularly troubled by the Supreme Court's overruling of *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). Thus, I concur with the majority's adoption of *Nichols.* To me, the fuss over the vitality of *Baldasar* is over nothing. It seems quite debatable whether uncounseled misdemeanor convictions are reliable enough to be used. Often, much less reliable information such as gossip, arrests, and other activities not even resulting in a trial, is considered during sentencing. My

---

5. In determining whether a particular statutory provision is an "essential element of the offense" or is a "sentencing enhancement," the legislature's definition of the elements of an offense controls. *United States v. Patterson,* 38 F.3d 139, 143 (4th Cir.1994); *United States v. Cross,* 916 F.2d 622, 623 (11th Cir.1990), *cert. denied,* 499 U.S. 929, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991), *citing McMillan v. Pennsylvania,* 477 U.S. 79, 84–85, 106 S.Ct. 2411, 2415–16, 91 L.Ed.2d 67, 75–76 (1986). In *United States v. Patterson,* 38 F.3d at 143, the court stated:

"Under the principles laid out in *McMillan,* we conclude that from a close textual analysis, the mandatory minimum provision in § 841(b)(1)(C) is a sentencing enhancement provision. The plain language contained in § 841(b)(1)(C) clearly indicates that punishment is predicated upon conviction under another statute—21 U.S.C. § 841(a). *See* 21 U.S.C. § 841(b) ('any person who violates subsection (a) of this section shall be sentenced as follows'); *cf. United States v. Vasquez–Olvera,* 999 F.2d 943, 945 (5th Cir.1993) (in determining whether statutory provision is separate offense or sentence enhancement, 'foremost feature of a sentence enhancement provision' is that it 'predicates punishment upon conviction under another section'), *cert. denied,* —— U.S. ——, 114 S.Ct. 889, 127 L.Ed.2d 82 (1994)."

The penalty provisions for shoplifting are separately set out in W.Va.Code, 61–3A–3(c) (1994), which states, in part:

"Upon a third or subsequent shoplifting conviction, regardless of the value of the merchandise, the person is guilty of a felony and shall be fined not less than five hundred dollars nor more than five thousand dollars, and shall be imprisoned in the penitentiary for not less than one year nor more than ten years."

Not only is the majority's analysis inconsistent with the United States Supreme Court as reflected of *McMillan, supra,* a conflict can be found in our recent decision of *State v. Farmer,* —— W.Va. ——, 454 S.E.2d 378 (1994). In *Farmer,* the Court held that for purposes of determining whether the ten- or twenty-year sentence is applicable under the kidnapping statute, W.Va. Code, 61–2–14a (1965), a trial judge may make the necessary findings as to bodily harm, etc., without violating the defendant's due process rights and right to a jury trial. The Court explicitly held that these matters are relevant for sentencing and are not elements of the crime. *Farmer* is the better reasoned opinion and is consistent with *McMillan.*

Finally, an overlooked consideration by the majority is that by declaring the enhancement provision to be an element of the offense, the prosecution must prove the prerequisites triggering the enhancement beyond a reasonable doubt. Neither the majority nor the Court in *State v. Cozart,* 177 W.Va. 400, 402 n. 1, 352 S.E.2d 152, 153 n. 1 (1986), discussed whether the prior convictions had to be proved beyond a reasonable doubt or by a lesser evidentiary standard. By holding that they are elements of the crime, its seems clear they must be proved beyond a reasonable doubt.

feeling is that *Nichols* merely allows evidence that is no worse than what ordinarily comes before the sentencing decisionmakers.