# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Danny Hundley,**
**Petitioner Below, Petitioner**

**vs)  No. 16-1111** (Greenbrier County 10-C-94)

**Patrick Mirandy, Warden,**
**Saint Mary's Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**April 5, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Danny Hundley, by counsel Eric M. Francis, appeals the Circuit Court of Greenbrier County's November 3, 2016, order denying his amended petition for writ of habeas corpus. Respondent Patrick Mirandy, Warden, by counsel Gordon L. Mowen, II and Mary M. Downey, filed a response.[1] Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying his amended habeas petition on the grounds of ineffective assistance of trial counsel, disproportionate sentence, and cumulative error.

This Court has considered the parties' briefs, oral arguments, and the appendix record on appeal. Under the limited circumstances presented in this case, we find a memorandum decision affirming in part and reversing and remanding in part for further proceedings appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure. As explained below, the Court finds that the circuit court committed no reversible error as pertains to petitioner's claim of ineffective assistance of counsel and therefore affirm that ruling. However, we find that the imposition of a recidivist life sentence violates the proportionality requirements of Article III, Section 5 of the West Virginia Constitution and therefore reverse the recidivist sentence and remand for resentencing in accordance with this decision.

In May of 2006, petitioner was arrested following his confession to police that he took an all-terrain vehicle ("ATV") from Jimmy Legg's residence without permission. Petitioner was later indicted on one count of burglary and one count of grand larceny. Prior to trial, the State offered to dismiss both charges if petitioner would plead guilty to one count of conspiracy to commit burglary. The State further agreed to not seek a recidivist sentence enhancement. Petitioner rejected this proposed plea agreement and instead chose to proceed to trial in January of 2007.

---

[1]Petitioner originally listed Marvin Plumley as respondent in this matter because, at the time, petitioner was housed at Huttonsville Correctional Center and Mr. Plumley served as the warden of that facility. However, petitioner has subsequently been transferred to Saint Mary's Correctional Center. Accordingly, pursuant to Rule 41(c) of the Rules of Appellate Procedure, the appropriate public officer has been substituted in the style of this matter.

1

The day before trial began, the State filed a notice of intent to seek a recidivist penalty and informed petitioner that, if convicted, the State would seek a life sentence pursuant to West Virginia Code § 61-11-18(c) (2000). Ultimately, the jury found petitioner guilty of both counts. The State then filed its recidivist information that alleged petitioner was previously convicted of multiple felonies.

In March of 2007, the circuit court proceeded to trial on the recidivist information, after which a jury found that petitioner was the same individual that was previously convicted of each of the felony offenses identified in the information. That same month, the circuit court sentenced petitioner to a term of life imprisonment as a habitual offender under West Virginia Code § 61-11-18(c). Petitioner appealed his conviction, and this Court refused the same by order entered in January of 2008.

In May of 2010, petitioner filed his initial petition for writ of habeas corpus, after which the circuit court ordered that he undergo a psychological evaluation to determine his competency and criminal responsibility at the time of the acts with which he was charged. In June of 2013, the circuit court received the evaluation, which concluded that, despite functioning at a borderline intellectual range, petitioner was competent to stand trial and, at the time of the crime, capable of appreciating the wrongfulness of his acts and conforming his acts to the requirements of the law.

In September of 2014, the circuit court held two omnibus evidentiary hearings regarding petitioner's claims. Thereafter, in December of 2014, Petitioner filed a *Losh* checklist and amended petition for writ of habeas corpus.[2] In his amended petition, petitioner set forth only the following grounds for relief: (1) ineffective assistance of counsel and (2) disproportionate sentence. In January of 2015, petitioner filed a supplemental memorandum in support of his amended petition that bolstered his factual support and argument for the grounds raised in the amended petition. Thereafter, by order entered on November 3, 2016, the circuit court denied petitioner's amended petition for writ of habeas corpus. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009). On appeal, petitioner raises three assignments of error: 1) that the circuit court erred in failing to find ineffective assistance of counsel; 2) that the circuit court erred in failing to find his recidivist life sentence disproportionate; and 3) cumulative error. We shall address each in turn.

---

[2]*Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

## I.    *Ineffective Assistance of Counsel*

Petitioner first alleges that the circuit court erred in denying him habeas relief based upon ineffective assistance of counsel.[3]  In his amended petition for writ of habeas corpus in the circuit court, petitioner asserted the following grounds for relief under his claim of ineffective assistance of counsel: 1) failing to communicate with petitioner "in a certain manner" based on his intellectual functioning; 2) failing to adequately meet with petitioner in preparation for his defense; and 3) permitting petitioner to testify at trial.[4]  Before this Court, however, the complexion of petitioner's argument regarding trial counsel's ineffectiveness changes substantially.  Petitioner argues that trial counsel was ineffective for failing to adduce evidence of his limited intellectual functioning at trial for the purpose of advancing a diminished capacity defense.[5]

---

[3] With respect to petitioner's first assignment of error—ineffective assistance of counsel— we note at the outset that the arguments made in support of this allegation vacillate dramatically as between petitioner's initial petition for habeas corpus relief, his amended petition, and his petition for appeal.  Although petitioner failed to properly preserve and/or develop certain of his arguments in support of these allegations, unless otherwise indicated, we find the record adequate to dispense with certain of them regardless.

[4] Although not developed below in the amended petition or before this Court, petitioner's original petition also asserts that trial counsel was ineffective for discouraging petitioner from accepting one of the two plea offers received from the State.  Out of an abundance of caution, the circuit court nevertheless addressed the allegation despite it apparently being abandoned in the amended petition.  The circuit court found that, contrary to petitioner's belated assertion, the evidence adduced during the habeas proceeding made it "painfully obvious" that trial counsel encouraged petitioner to consider the plea offer and explained the offer and rejection repercussions to him.  Although not properly presented to the Court on appeal, we agree with the circuit court's analysis of this issue based upon the record before us.

[5] For the first time, in his petition for appeal, petitioner argues that trial counsel was likewise ineffective for failing to attack the predicate offenses upon which the recidivist enhancement was based.  In particular, he argues that counsel was ineffective for failing to argue that burglary is not a crime of violence.  Petitioner likewise suggests—without attributing this assertion to any ineffectiveness of trial counsel—that the recidivist record is incomplete based on his counsel's inability to locate the certified records of his prior offenses introduced into evidence during the recidivist trial.  Neither of these issues were addressed by the circuit court inasmuch as petitioner plainly failed to raise these arguments in his amended petition.  "This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal." *State v. Jessie*, 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009) (citing *Whitlow v. Bd. of Educ. of Kanawha Cty.*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993)).

Nevertheless, we observe that petitioner's assertion that trial counsel was ineffective for failing to argue that burglary is a not a crime of violence is not well-taken inasmuch as this Court has plainly indicated to the contrary:  "[B]urglary and grand larceny [are] crimes that by their very nature involve[] the threat of harm or violence to innocent persons."  *State v. Housden*, 184 W. Va. 171, 175, 399 S.E.2d 882, 886 (1990).  Moreover, the fact that this Court ultimately hereinafter

We have held that

> [i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). A claim may be disposed of for failure to meet either prong of the test. Syl. Pt. 5, in part, *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995). "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden, W.Va. Penitentiary*, 207 W.Va. 11, 17, 528 S.E.2d 207, 213 (1999).

With respect to petitioner's assertions of ineffective assistance of counsel based upon his intellectual functioning, we address those collectively. Petitioner asserts that his borderline intelligence required trial counsel to "explain the procedure to him in a certain manner" and that trial counsel should have "further investigated" and/or adduced this evidence at trial for the purpose of asserting a diminished capacity defense. Insofar as trial counsel's manner of explaining the process to petitioner, the circuit court found that petitioner failed to establish that trial counsel's "performance in communicating with the [p]etitioner was deficient[.]" The circuit court noted that during the habeas evidentiary hearing, petitioner was presented with various materials which he understood in substance and had the opportunity to request further explanation for any words which he may not have understood. We agree with the circuit court that petitioner has failed to demonstrate any sort of deficiency in trial counsel's manner of communicating and explaining the process to him.

Insofar as petitioner's contention that trial counsel was under an obligation to "further investigate" his borderline intelligence for the purpose of claiming diminished capacity, petitioner has likewise failed to demonstrate either an objective deficiency or reasonable probability of a different outcome. A psychological evaluation demonstrated that petitioner was competent to stand trial, had an "adequate factual and rational appreciation of the proceedings," and the capacity to assist his attorney in his defense. Moreover, this evaluation revealed that petitioner was criminally responsible for his offenses and that "[h]is mental disorders would not have prevented him from appreciating the wrongfulness of his acts" or "conforming his acts to the requirements of law." Trial counsel testified that petitioner was "reasonably articulate, understood the process, [and] understood the notion of criminal responsibility[.]"

Moreover, petitioner's contention that trial counsel foreclosed an opportunity to investigate or advance a "diminished capacity" defense is undermined by the cases he cites in support. In

---

concludes that petitioner's offenses are in fact disproportionate to his recidivist life sentence is not an implicit endorsement of this assertion of ineffectiveness. Rather, our conclusion is based strictly upon a proportionality assessment that is peculiarly within the province of the Court. With respect to the availability of the trial exhibits, *see* n.9, *infra*.

4

*Wickline v. House*, 188 W.Va. 344, 424 S.E.2d 579 (1982), the Court found ineffective assistance of counsel where trial counsel failed to investigate Wickline's possible diminished capacity. However, Wickline was not merely of borderline intellectual function, but also had "longstanding neurological problems." *Id*. at 348, 424 S.E.2d at 583. More importantly, however, Wickline offered expert testimony that "had [she] been evaluated for diminished capacity, there was a reasonable probability that he would have found that [she] did not knowingly waive her Miranda rights prior to [her] confession[,]" which confession was the centerpiece of the prosecution's case. *Id*. Moreover, in *State v. Joseph*, we explained that a diminished capacity defense is available to introduce expert testimony "regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime charged." Syl. Pt. 3, in part, 214 W. Va. 525, 526-27, 590 S.E.2d 718, 719-20 (2003). As indicated above, petitioner was found both competent and criminally responsible for his offenses.

We therefore conclude that petitioner has failed to establish that his trial counsel was ineffective. Accordingly, we find no error in the circuit court's refusal of habeas relief on this basis.[6]

---

[6] Imbedded within petitioner's amended petition and petition for appeal is a paragraph raising the spectre of insufficiency of the indictment. Although neither developed on a stand-alone constitutional basis nor expressly tied to allegations of ineffective assistance, petitioner cursorily suggests that the burglary indictment was insufficient. However, in support of this argument, petitioner fails to allege how the indictment at issue was defective. In fact, petitioner does not cite to the indictment or its language at all. Instead, petitioner makes general assertions regarding his mistaken belief that he was permitted to borrow the ATV in question and how such belief established that he lacked the intent to commit burglary. It is clear that petitioner cannot establish that the results of the proceedings would have been different had trial counsel pursued relief based on the sufficiency of the indictment. "Generally, the sufficiency of an indictment is reviewed *de novo*. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syl. Pt. 2, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996). The indictment in question plainly tracked the language of the burglary statute, as found at West Virginia Code § 61-3-11(a) (1993). Specifically, the indictment set forth, in part, that petitioner "feloniously and burglariously did enter [the victim's home] without breaking, in the nighttime, with intent to commit a crime therein" and, thereafter, did commit a crime therein. Accordingly, to whatever extent this assertion was raised, it is clear that it lends petitioner no relief.

Finally, we note that petitioner advanced two additional arguments in his amended petition, which were addressed by the circuit court, but not argued on appeal: that trial counsel was ineffective for adequately meeting with him to prepare for his defense and by allowing him to testify. "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996). Nevertheless, it is clear that these contentions are neither factually nor legally supportable. Trial counsel testified that his billing records revealed five meetings with petitioner, as well as multiple meetings incident to his court appearances. Further, the record plainly reveals that the trial court warned petitioner and his counsel of the dangers of testifying and engaged in an

*II.     Disproportionate Sentence*

Petitioner next asserts that his sentence was unconstitutionally disproportionate because he received a life sentence predicated, in part, upon "traffic offenses," posing no threat of violence. He further makes specific challenges to the use of the underlying felony driving under the influence ("DUI") offenses to support the recidivist sentence. While we staunchly disagree with petitioner's characterization of the predicate DUI charges as mere "traffic offenses" and further find no merit to his challenges to the use of these offenses as predicates to a recidivist enhancement, we agree that under the limited circumstances of this case, the use of a life sentence recidivist enhancement violates the proportionality principles of the West Virginia Constitution, Article III, Section 5.

West Virginia Code § 61-11-18(c) provides that "[w]hen it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." In this case, the habeas court determined that evidence of petitioner's 2000 3rd offense felony DUI, 2003 3rd offense felony DUI, and 2007 burglary and grand larceny convictions, properly formed the basis of petitioner's recidivist conviction.[7]

We address first petitioner's specific challenges to the sufficiency of the two DUI convictions for use in the recidivist proceeding. Before the circuit court, petitioner argued that as to the DUI convictions, they are insufficient to form the basis of the enhancement due to the age of the misdemeanor conviction underlying the 3rd offense DUI and its use as predicate for *both* 3rd offense DUIs. Petitioner argues that the misdemeanor offense DUI upon which the 3rd offense convictions were based is greater than ten years old, having occurred in 1986. He cites West Virginia Code § 17C-5-2(n)(1) (2016), which provides that to support a subsequent DUI offense, the prior conviction must have occurred "within the ten-year period immediately preceding the date of arrest in the current proceeding." However, this provision was enacted after petitioner's 2000 and 2003 DUI convictions were final.[8] Accordingly, it is inapplicable to those convictions.[9]

---

exchange with petitioner clearly expressing petitioner's desire to testify in his own defense. Accordingly, we find that the circuit court likewise correctly dispensed with these arguments.

[7] Although evidence of a 2000 forgery was likewise introduced in the recidivist proceeding, the circuit court determined that due to the date of the commission of the forgery, it was not proper for consideration for recidivist enhancement. *See State v. McMannis*, 161 W. Va. 437, 441, 242 S.E.2d 571, 575 (1978) (holding that predicate recidivist *offenses* must occur in succession following *conviction* and *sentence* on preceding offense).

[8] At the time of its original enactment, this provision was located at West Virginia Code § 17C-5-2(l)(1).

[9] Petitioner's argument that he is unable to challenge the validity of his convictions for DUI because the records of those convictions are not in the circuit court's file or any appendices of these proceedings is not properly before this Court. Petitioner admits that this argument was not

6

Petitioner next argues that, since the misdemeanor DUI was used as a predicate for both the 2000 and 2003 subsequent DUI convictions, those convictions were "not truly separate and distinct" for purposes of the recidivist statute. However, the use of the same misdemeanor conviction to form the basis of the 2000 and, in part, the 2003 DUI convictions is immaterial to the use of those felony convictions under the recidivist statute. West Virginia Code § 61-11-18 requires simply that a person have been "twice before convicted . . . of a crime punishable by confinement in a penitentiary[.]" Therefore the pertinent convictions for recidivist purposes are the two felony 3rd offense DUIs—not the convictions which gave rise to those 3rd offense convictions.[10] Moreover, this Court has made clear that

> [d]espite the fact that a third offense DUI felony conviction pursuant to West Virginia Code § 17C-5-2(j) (Supp.1995) results from an enhanced misdemeanor, the Legislature intended that this type of felony conviction be used for sentence enhancement in connection with the terms of the recidivist statute, West Virginia Code § 61-11-18 (Supp.1995).

Syl. Pt. 3, in part, *State v. Williams*, 196 W.Va. 639, 474 S.E.2d 569 (1996). Therefore, petitioner's challenges to the validity of the predicate recidivist convictions provide him no relief.

However, as previously noted, before this Court, petitioner focuses exclusively on the nature of the offenses, arguing that neither the DUIs nor the most recent burglary and grand larceny are crimes of violence and therefore a life sentence enhancement is unconstitutionally disproportionate. This Court has held: "Article III, Section 5 of the West Virginia Constitution,

---

presented to the circuit court by stating in his petition to this Court that, "while preparing for this brief, [p]etitioner's counsel looked at the recidivist trial in this matter . . . and found that . . . there were no certified records in the [c]ourt file, nor in the appendices, that correlated to exhibits 1-5 as stated in the recidivist trial." Accordingly, it is clear that this argument was not presented to the circuit court and, thus, is not appropriate for appellate review. *See Jessie*, 225 W.Va. at 27, 689 S.E.2d at 27. Nevertheless, we note that the transcript of the recidivist trial clearly demonstrates that certified copies of records concerning petitioner's two prior felony DUI convictions, along with petitioner's forgery conviction, were marked and received into evidence during that trial.

[10] Petitioner further asserts in his amended petition that because the underlying misdemeanor DUI conviction was entered into without counsel, it was improperly used for enhancement in the 2000 and 2003 3rd offense DUIs, citing *State v. Hopkins*, 192 W. Va. 483, 453 S.E.2d 317 (1994). Petitioner misreads *Hopkins*, as it stands for precisely the *opposite* proposition: "[U]nder the sixth amendment to the *U. S. Constitution* and article III, section 14 of the *West Virginia Constitution*, 'an uncounseled misdemeanor conviction, valid under *Scott* [*v. Illinois*, 440 U.S. 367, 99 S. Ct. 1158, 59 L.Ed.2d 383 (1979)], because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction.' *Nichols* [*v. United States*] 511 U.S. 738, ——, 114 S. Ct. 1921, 1928, 128 L.Ed.2d 745, 755 (1994)." Syl. Pt. 3, *Hopkins*, 192 W. Va. 483, 453 S.E.2d 317, *overruled on other grounds by State v. Nichols*, 208 W. Va. 432, 541 S.E.2d 310 (1999).

which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syl. Pt. 8, *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980). The proportionality requirement has been found expressly to apply to recidivist proceedings: "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. Pt. 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

In that regard, we have held:

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

Syl. Pt. 7, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981). As indicated, petitioner characterizes his previous felony DUI convictions as "traffic offenses." As this Court made clear in *State ex rel. Appleby v. Recht*, 213 W. Va. 503, 516, 583 S.E.2d 800, 813 (2002), "[w]e have little trouble in finding that driving under the influence is a crime of violence supporting imposition of a recidivist sentence." Moreover, as previously indicated, we have plainly recognized that "burglary and grand larceny [are] crimes that by their very nature involve[] the threat of harm or violence to innocent persons." *Housden*, 184 W. Va. at 175, 399 S.E.2d at 886.

Nevertheless, although we have regarded petitioner's underlying and triggering offenses as crimes of violence in general, our guiding syllabus point requires the Court to look beyond these generalities to the specific circumstances surrounding the crimes to ensure constitutional proportionality. "[W]e have historically adopted a rather strict and narrow construction of our recidivist statute[]" and "consistently viewed [it] in a restrictive fashion in order to mitigate its harshness." *Wanstreet*, 166 W. Va. at 525, 528, 276 S.E.2d at 207-08, 209.

In that regard, our guiding syllabus point requires the Court to "determine if [the offenses] involve *actual or threatened* violence to the person . . . ." Syl. Pt, 7, in part, *Beck*, 167 W. Va. 830, 286 S.E.2d 234 (emphasis added). In *State ex rel. Boso v. Hedrick*, 182 W. Va. 701, 391 S.E.2d 614 (1990), the Court found that a recidivist sentence based, in part, upon breaking and entering and night-time burglary was disproportionate. The Court noted that breaking and entering is not "per se a crime of violence" and that the night-time burglary was committed in an unoccupied dwelling. *Id*. at 709, 391 S.E.2d at 622. The Court further noted that the record was devoid of any indication that "any weapons were used in these crimes or that there was a threat of violence to any person." *Id*. Moreover, in *State v. Davis*, 189 W. Va. 59, 61, 427 S.E.2d 754, 756 (1993), the Court similarly found a recidivist life sentence disproportionate where "[t]here [was] no suggestion that actual violence was used or was threatened in the course of the commission of the crime."

8

Emphasizing that the underlying crimes of receiving stolen property and breaking and entering were "neither violent in nature or in actuality," the *Davis* Court again referenced the fact that neither of these offenses were "*per se* a crime of violence." *Id.* at 61, 427 S.E.2d at 757.

Finally, in *State v. Miller*, 184 W. Va. 462, 465, 400 S.E.2d 897, 900 (1990), the Court found a recidivist life sentence disproportionate where, despite the presence of actual violence in the triggering offense, the predicate offenses were either decidedly non-violent or "posed only a threat of violence." Noting that "the propensity for violence is an important factor to be considered," the *Miller* Court noted the absence of a "'discernible trend of violence.'" *Id.* (quoting *State v. Oxier*, 179 W. Va. 431, 434, 369 S.E.2d 866, 869 (1988) (J. Miller, dissenting)).

Inasmuch as this Court has directed that "the third felony is entitled to more scrutiny than the preceding felony convictions since it provides the ultimate nexus to the sentence," we are compelled to place particular emphasis on petitioner's grand larceny and burglary offenses. *Wanstreet*, 166 W. Va. at 534, 276 S.E.2d at 212. Like the cases discussed above, petitioner's grand larceny and burglary offenses involved no actual or even threatened violence. Petitioner absconded with an ATV from the separately accessible basement of the Leggs' home under cover of night, without interacting with anyone. While the home was not unoccupied, the evidence reveals that the Leggs' basement lacked interior access to their home. The evidence appears undisputed that petitioner was well-acquainted with the Leggs and regularly borrowed the ATV at issue with permission. While providing neither a legal or factual "excuse" for petitioner's crimes, it is clear that these circumstances demonstrate an offense of neither actual nor threatened harm. Accordingly, we find that under the highly particularized circumstances presented herein, petitioner's recidivist life sentence is unconstitutionally disproportionate.[11]

For the foregoing reasons, we affirm the circuit court's determination that petitioner is not entitled to habeas relief for ineffective assistance of counsel. However, we find that petitioner's sentence was unconstitutionally disproportionate to his offenses and therefore reverse the circuit court's order of March 27, 2007, imposing a life sentence and remand for resentencing as to the burglary and grand larceny charges. *See State ex rel. McMannis v. Mohn*, 163 W. Va. 129, 254 S.E.2d 805 (1979) (outlining options upon vacation of recidivist sentencing).

Affirmed, in part, and reversed and remanded, in part.

**ISSUED:** April 5, 2018

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Allen H. Loughry II

---

[11] Having afforded petitioner relief as to his claim of disproportionate sentencing, and having otherwise found no error, it is unnecessary to address petitioner's claim of cumulative error.

**CONCURRING AND WRITING SEPARATELY:**

Ketchum, J., concurring:

I concur in the majority's conclusion that petitioner's recidivist life sentence was unconstitutionally disproportionate. While I agree that petitioner's burglary and grand larceny convictions lacked sufficient indicia of "actual or threatened" violence, I also maintain that driving under the influence ("DUI") likewise lacks "actual or threatened" violence. Despite dicta contained in our precedent suggesting otherwise, it is clear that driving under the influence is not a categorical "crime of violence" constitutionally sufficient to justify a recidivist conviction. The United States Supreme Court has flatly characterized DUI as "non-violent." *Solem v. Helm,* 463 U.S. 277 (1983). *See also Dalton v. Ashcroft*, 257 F.3d 200, 208 (2d Cir. 2001) (holding that DUI is not a crime of violence); *U. S. v. Chapa-Garza*, 243 F.3d 921, 927 (5th Cir. 2001) (holding that DUI is not a conviction of a crime of violence), *reh'g denied*, 262 F.3d 479 (5th Cir. 2001); *Bazan-Reyes v. INS*, 256 F.3d 600, 612 (7th Cir. 2001) (holding that DUI and homicide by intoxicated use of a vehicle are not crimes of violence); *U.S. v. Trinidad-Aquino*, 259 F.3d 1140, 1146 (9th Cir. 2001) (same).

As these courts have observed, "a drunk driving accident is not the result of plan, direction, or purpose, but of recklessness at worst and misfortune at best." *U. S. v. Rutherford*, 54 F.3d 370, 372 (7th Cir. 1995). Nor is "violence" the necessary precursor to serious physical harm; serious physical harm may occur as a result of all manner of wrongful or merely negligent acts. Simply because serious harm does or is even likely to occur, the nature of the act is not transformed into one of "violence." Accordingly, I respectfully concur.

**DISSENTING AND WRITING SEPARATELY:**

Loughry, J., dissenting:

I would affirm the circuit court's denial of habeas corpus relief to Petitioner Hundley. The majority completely disregards our well-established precedent indicating that burglary is, by its nature, a crime of violence. In fact, after articulating that this Court has recognized that *all* of the petitioner's predicate crimes are crimes of violence, the majority nonetheless determines that his recidivist life sentence violates the proportionality requirements of Article III, Section 5 of the West Virginia Constitution.

In syllabus point seven of *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981), this Court held:

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine

> if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

The majority correctly finds that the petitioner's two predicate offenses, both third offense felony DUIs, properly form the basis of a recidivist sentence. However, on the issue of whether the petitioner's final offense, burglary, was sufficient to merit a life sentence, the majority's analysis goes badly awry.

First, the majority runs afoul of our law by acknowledging this Court's recognition that "burglary [is a] crime[] that by [its] very nature involve[s] the threat of harm or violence to innocent persons," *State v. Housden,* 184 W.Va. 171, 175, 399 S.E.2d 882, 886 (1990), and then immediately contradicts itself by finding that the burglary under the specific facts of this case did not involve actual or threatened harm. If burglary by its very nature involves actual or threatened harm, examining the "facts" of the burglary is a transparent attempt to evade the necessary consequence of our precedent.

In addition, in reaching its decision that the petitioner's night-time burglary is insufficient to merit a recidivist life sentence, the majority relies on three cases that are wholly inapposite to the facts of the instant case and "cherry-picks" language from the cases to justify its outcome. The majority acknowledges that the burglary in this case was into the basement of an occupied dwelling, Nevertheless, the majority relies on *State ex rel. Boso v. Hedrick*, 182 W.Va. 701, 391 S.E.2d 614 (1990), despite the fact that the night-time burglary in that case occurred *in an unoccupied dwelling*. Similarly, the majority selectively relies on language from *State v. Davis*, 189 W.Va. 59, 427 S.E.2d 754 (1993), without acknowledging in that case that the final or triggering felony

> was a simple breaking and entering of a building, *not a dwelling*, which resulted in the theft of approximately $10.00. There is no suggestion that actual violence was used or was threatened in the course of the commission of the crime. The business, at the time, was closed at night and *no one was present on the premises.*

*Id.*, 189 W.Va. at 61, 427 S.E.2d at 756 (emphasis added). The final decision relied on by the majority is *State v. Miller*, 184 W.Va. 462, 400 S.E.2d 897 (1990). In *Miller*, this Court found a recidivist sentence disproportionate based on the predicate offenses which were forgery and uttering, false pretenses, and breaking and entering a gas station. Significantly, none of these cases involved the burglary of an occupied dwelling.

In sharp contrast to the cases relied upon by the majority, the petitioner entered the basement of a dwelling at night while the occupants of the dwelling were asleep. Further, the petitioner admitted that he had been drinking on the day of the crime. Obviously, these circumstances created a significant threat of violence to the occupants of the dwelling. It is instructive to compare the instant case with the facts in *State v. Housden*, wherein this Court upheld a recidivist life sentence imposed on a habitual offender for his burglary of the victim's home even though the offender claimed he was aware that the victim was not at home at the time of the

11

burglary. The Court sagely reasoned that this fact "did not render the crime one which could be classified as nonviolent in nature." 184 W.Va. at 174, 399 S.E.2d at 885.

In its zeal to reach its outcome, the majority conveniently ignores the fact that this Court has repeatedly recognized that the crime of burglary inherently involves the threat of violence. In *Martin v. Leverette*, 161 W.Va. 547 554-555, 244 S.E.2d 39, 43-44 (1978), this Court indicated that "[b]oth crimes [burglary and armed robbery] are serious and involve the threat of violence against persons, if not actual violence in the case of armed robbery." *Id.*, at 554-55, 244 S.E.2d at 43-44. Moreover, in *State v. Evans*, 203 W.Va. 446, 508 S.E.2d 606 (1998), this Court "expressly reject[ed] [the appellant's] contention that burglary does not constitute a crime of violence." *Id.*, at 450, 508 S.E.2d at 610 (*citing Martin v. Leverette*, 161 W.Va. 547, 555, 244 S.E.2d 39, 43-44 for the proposition that burglary is a "serious [crime] and involve[s] the threat of violence against persons"). In the case at bar, the burglary involved the threat of violence to those who were asleep in the dwelling at the time of the burglary. Under a straightforward application of this Court's precedent, the petitioner's life sentence is constitutionally proportionate to his crimes. Accordingly, I respectfully dissent.